[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13002

_____

D. C. Docket No. 03-00443-CR-02-CC-1

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

MONTERRIO KELLEY,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 16, 2005)

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

_____

[*]Honorable J. Owen Forrester, United States District Judge for the Northern District of
Georgia, sitting by designation.

PRYOR, Circuit Judge:

In this appeal from a conviction for bank robbery in violation of 18 U.S.C. section 2113(a), we must resolve whether there was sufficient evidence to support the conviction of Monterrio Kelley in three respects: (1) whether Kelley took money from the Bank of America by intimidation; (2) whether Kelley took money "from the person or presence of another"; and (3) whether Kelley was present at the robbery. Because the evidence at trial showed that Kelley and his accomplice jumped and slammed onto a bank counter, frightened two bank tellers, and grabbed money out of a cash drawer within arm's length of one of those tellers, we conclude that the jury reasonably found that Kelley violated section 2113(a). We affirm the judgment of conviction.

## I. BACKGROUND

On July 15, 2003, two female tellers at a Bank of America branch inside an Atlanta-area Kroger grocery store noticed two men walking back and forth in front of the bank. When one of the tellers, Tiffany Spurlock, walked away from her teller station to make a phone call, the two men jumped on top of the teller counter, opened Spurlock's unlocked cash drawer, and began grabbing handfuls of cash from the drawer. Although Spurlock had stepped away from her teller position, the other teller, Ryan Kornegay, remained at her position, which was next to

2

Spurlock's position and within arm's length of the robbers. Neither Spurlock nor Kornegay tried to resist the robbery or to activate the silent alarm.

The two robbers, later identified as Kelley and Corey "Nick" Moss, fled the store and entered a waiting vehicle. Shortly after the robbers fled with the $961 they had stolen, a dye pack hidden in one of the cash bundles exploded. The getaway driver, Jarvis Prothro, who never entered the bank, stopped the vehicle. Kelley and Moss entered another vehicle they had parked nearby earlier and drove away.

Kelley and Moss left Prothro with the first getaway vehicle. When Prothro tried to follow Kelley and Moss, the red smoke from the dye pack made it impossible for Prothro to see the road. Prothro's vehicle crashed into a brick median. Prothro suffered a broken leg and was immediately apprehended.

Kelley was not arrested until almost two months later. Kelley's first trial resulted in a hung jury. During the second trial, Kornegay testified that on the day of the robbery, she was standing at her teller station when she heard a "loud bang." Kornegay looked to her left and saw two men lying across the teller counter, grabbing money from Spurlock's cash drawer. The two men were close enough that "if they reached their arm out they could touch [Kornegay]," and Spurlock's cash drawer was so close to Kornegay's that both drawers could not be opened at

3

the same time without bumping into each other. Kornegay testified that she "was really scared" by the actions of the robbers and backed away into a nearby room. She did not activate the silent alarm, because she was scared and "just wanted to get away from them. . . ."

Spurlock also testified that she heard a "loud smacking sound" and "the sound of coins rattling" when Kelley and his accomplice jumped on the counter, even though she was away from her teller station using the telephone. Spurlock testified that, when she heard those sounds, she looked toward her station and saw the robbers grabbing money out of her cash drawer. Spurlock noticed that Kornegay looked "shocked, surprised, and scared all at once," and Spurlock was also shocked and scared. Spurlock did nothing to stop the robbery, because she did not want the situation to escalate.

Prothro, the getaway driver, testified that, on the day of the robbery, Kelley arrived at Prothro's house in a Chevrolet. The two men drove to pick up Moss, and from Moss's house the three men drove to the Kroger. Kelley, who was driving, pulled up in front of the Kroger and went inside with Moss. Prothro got into the driver's seat and waited for Kelley and Moss. Several minutes later, Kelley and Moss ran out from the store and screamed "go, go, go" to Prothro. All three then fled the scene.

4

Several witnesses contradicted Prothro. A security guard who worked at the shopping center on the day of the robbery testified that Prothro, not Kelley, drove to the Kroger. The security guard further testified that Kelley and Moss did not shout anything at Prothro when they ran from the store and entered the getaway vehicle. Kelley's girlfriend, Kimmica Dennard, testified that she dropped Kelley off at work on the day of the robbery. Kelley's employer, Roger Dennard, testified that Kelley might have worked for him on that day, although he was not entirely sure.

Kelley moved for a judgment of acquittal at both the close of the government's case and after the defense rested. Both motions were denied. The jury found Kelley guilty, and the district court sentenced Kelley to 84 months' imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo whether the evidence presented at trial was sufficient to sustain a conviction. United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000). We will uphold the denial of a motion for a judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." Id. We must accept all reasonable inferences and credibility choices by the fact-finder. United States v. Quesada-Rosadal, 685

5

F.2d 1281, 1284 (11th Cir. 1982).

### III. DISCUSSION

Kelley makes three separate arguments regarding the sufficiency of the evidence against him.  Kelley was convicted of violating 18 U.S.C. section 2113(a), which punishes the forcible taking of money or property from a bank: "Whoever, by force and violence, or by intimidation, takes . . . from the person or presence of another . . . any property or money . . . belonging to . . . any bank, . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 2113(a).  Kelley argues that there was insufficient evidence to prove that (1) he took money from the bank by force, violence, or intimidation; (2) that he took money from the person or presence of another; and (3) that he was one of the robbers.  We address each of these arguments in turn.

*A.  There Was Sufficient Evidence to Prove that Kelley Took*
*Money From the Bank of America by Intimidation.*

Because the government does not contend that Kelley took money from the Bank of America by force or violence, whether the actions of Kelley amounted to "intimidation" is a key question in this appeal.  Under section 2113(a), "intimidation occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts."  United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996) (per curiam) (citations and

6

quotation marks omitted). Whether a particular act constitutes intimidation is viewed objectively, id., and a defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating. United States v. Yockel, 320 F.3d 818, 824 (8th Cir. 2003); United States v. Woodrup, 86 F.3d 359, 364 (4th Cir. 1996); United States v. Foppe, 993 F.2d 1444, 1451 (9th Cir. 1993).

Kelley argues that no reasonable juror could have found that he took money from the Bank of America by "intimidation." In Kelley's words, there "was no gun displayed, no note, no demand[] of any kind made" by Kelley, and the "two perpetrators did not so much as look at either teller, much less say anything to either one." According to Kelley, the evidence against him was insufficient as a matter of law to show a taking by intimidation.

We disagree. Kelley's conviction must stand "unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." United States v. Byrd, 403 F.3d 1278, 1288 (11th Cir. 2005) (per curiam) (citation and quotation marks omitted). The evidence of intimidation was not so lacking that no reasonable jury could have found Kelley guilty.

The evidence at trial showed that Kelley and Moss slammed onto the teller counter hard enough that Spurlock heard the noise from another room. Kornegay was within arm's length of Kelley and Moss as they removed cash from Spurlock's

7

cash drawer. Both tellers testified that they were so frightened they failed to activate the bank's silent alarm. Based on that evidence, "an ordinary person in the teller's position reasonably could infer a threat of bodily harm from [Kelley's] acts." Cornillie, 92 F.3d at 1110.

Kelley argues that this appeal is similar to United States v. Wagstaff, 865 F.2d 626 (4th Cir. 1989), where the Fourth Circuit reversed a conviction for bank robbery on the basis that the evidence was insufficient to prove intimidation. Wagstaff "was at all times at least eight feet from the nearest teller," was "neither wearing nor carrying a weapon," never presented "any kind of written note," said nothing and "made no overtly threatening gestures in the approximately fifteen seconds that he was at the cash drawer." Id. at 627. Kelley contends that this case is not even as close as Wagstaff, because Kelley and Moss never walked behind the teller counter, as did Wagstaff, never looked at either teller, and were in the cash drawer for only five seconds, as opposed to the fifteen seconds that Wagstaff lingered behind the teller counter.

Wagstaff is distinguishable. Wagstaff never got closer than eight feet to the nearest teller, while Kelley was within arm's length of Kornegay. Cf. Wagstaff, 865 F.2d at 627. Kelley's aggressive leap onto the counter, along with his close proximity to Kornegay, could have led a reasonable person in that situation to feel

8

intimidated. Wagstaff also never made any sudden or loud physical movements, but Kelley slammed on the counter hard enough that Spurlock heard a "loud smacking sound," even though she was in another room. Cf. id.

This appeal, although closer, is more analogous to United States v. Caldwell, 292 F.3d 595 (8th Cir. 2002). In Caldwell, the defendant "slammed his hands down on the counter and vaulted over it. . . . [The defendant] made eye contact with [the teller] as he moved toward her. He approached to within one to two feet of her and then turned and went around another counter to [an adjacent] teller station. . . ." Id. at 596. After the defendant emptied the cash drawer of money, he jumped back over the counter and left. Id. The defendant "said nothing to [the teller] while he was in the bank, nor did he gesture at her with his hands or make any indication that he had a weapon." Id. The Eighth Circuit rejected the defendant's reliance on Wagstaff and concluded that a reasonable person would have been intimidated by the defendant's actions: "We believe that any reasonable bank teller would be intimidated . . . by the sight of someone leaping over the teller counter toward her or him. . . . While Caldwell did not speak or give any indication that he had a weapon, his aggressive actions would be intimidating to a reasonable person." Id. at 597.

As in Caldwell, Kelley's leap onto the counter caused an audible and

9

startling noise, and Kelley was within arm's length of Kornegay. Kelley's close proximity to Kornegay could have led a reasonable bank teller to fear that any resistance, real or perceived, would be met with violence. As in Caldwell, Kelley did not possess a weapon, did not produce a demand note, did not speak to a teller, and physically took the money himself instead of requiring a bank teller to hand it over. Cf. id. at 596-97. Although Caldwell, unlike Kelley, jumped fully over the teller counter and made eye contact with the teller, the jury found that a reasonable bank teller would have been intimidated by the sight and sound of Kelley's jumping onto the bank counter—within arm's length of Kornegay—and grabbing a fistful of dollars from Spurlock's cash drawer. The district court, therefore, did not err when it denied Kelley's motion for a judgment of acquittal.

### B. There Was Sufficient Evidence to Prove that Kelley Took Money from the Person or Presence of Another.

To be guilty of bank robbery, an offender must take a bank's money or property "from the person or presence of another." 18 U.S.C. § 2113(a). Kelley argues that he did not take money from the person or presence of another, because Spurlock was not at her teller position when Kelley removed money from her cash drawer. We disagree.

The phrase "from the person or presence of another" is not defined in the statute, and although we have not yet interpreted that phrase in the context of

10

section 2113(a), we have interpreted that identical phrase in 18 U.S.C. section 2119. That statute prohibits the forcible taking of a motor vehicle that has been transported, shipped, or received in interstate commerce. In <u>United States v. Kimble</u>, 178 F.3d 1163 (11th Cir. 1999), we held that the forcible taking of a motor vehicle was "from the person or presence of another" if the vehicle was "so within [the victim's] reach, inspection, observation or control, that [the victim] could if not overcome by violence or prevented by fear, retain his possession of it." <u>Id</u>. at 1167 (citation and quotation marks omitted).

The <u>Kimble</u> analysis applies equally to section 2113(a). A taking in violation of section 2113(a) is from the person or presence of another when the money or property taken "is so within [the victim's] reach, inspection, observation or control, that [the victim] could if not overcome by violence or prevented by fear, retain his possession of it." <u>Id.</u> With that definition in mind, we reject Kelley's argument that he did not take money from the person or presence of another.

Kornegay, the bank teller, testified that she was within arm's length of Kelley as he lay across the counter removing money from Spurlock's cash drawer. That fact easily satisfies the requirement under section 2113(a) that a taking be from the person or presence of another. The district court did not err by denying Kelley's motion for a judgment of acquittal on this ground.

11

## C. The Evidence Was Sufficient to Prove that Kelley Was Present at the Bank Robbery.

Kelley finally contends that there was insufficient evidence to prove that he was present during the commission of the offense. According to Kelley, Prothro "provided the government with the only evidence which implicated Mr. Kelley in [the] crime alleged," because neither Kornegay nor Spurlock could positively identify Kelley as one of the robbers. Prothro also gave testimony that "physically could not have occurred under the laws of nature." Kelley argues that Prothro's testimony was inherently unbelievable, because it was inconsistent both with the testimony of the security guard, who contradicted elements of Prothro's testimony, and Prothro's employer, Dennard, who testified that Kelley might have worked for him on the day of the robbery.

Kelley's argument fails. First, Dennard was unsure whether Kelley worked on July 15, 2003, the day of the robbery. Dennard testified that Kelley "could have" worked on that day, but Dennard also testified that Kelley "could have" worked on the following day. Dennard's testimony failed to establish conclusively that Kelley could not have been present at the scene of the robbery.

Second, Prothro's testimony was not "impossible under the laws of nature" merely because it was inconsistent with the security guard's version of events. Testimony is inherently unbelievable only when it is "so contrary to the teachings

12

of basic human experience . . . that no reasonable person would believe it beyond a reasonable doubt.  If a witness were to testify that he ran a mile in a minute, that could not be accepted, even if undisputed."  United States v. Chancey, 715 F.2d 543, 546 (11th Cir. 1983).

Prothro's testimony was not contrary to the teachings of basic human experience.  It was simply inconsistent with that of the security guard.  The jury was entitled to weigh Prothro's testimony against that of the guard and to decide which was credible: "To the extent that [Kelley's] argument depends upon challenges to the credibility of witnesses, the jury has exclusive province over that determination and the court of appeals may not revisit this question."  United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999).  Because the "uncorroborated testimony of an accomplice is sufficient to support a conviction in the Federal Courts if it is not on its face incredible or otherwise insubstantial," United States v. LeQuire, 943 F.2d 1554, 1562 (11th Cir. 1991), the district court did not err by denying Kelley's motion for a judgment of acquittal on this ground.

## IV.  CONCLUSION

The evidence presented at trial was sufficient to prove that Kelley took money from the Bank of America by intimidation.  The evidence was also sufficient to prove that Kelley took money from the person or presence of another,

13

and that Kelley was present during the commission of the offense.  The judgment

of conviction is

      **AFFIRMED.**