# United States Court of Appeals
## For the First Circuit

No. 16-1460

UNITED STATES OF AMERICA,

Appellee,

v.

DOUGLAS ELLISON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Bjorn Lange, Assistant Federal Public Defender, was on brief for appellant.

Seth R. Aframe, Assistant United States Attorney, with whom Emily Gray Rice, United States Attorney, was on brief for appellee.

August 2, 2017

**BARRON**, <u>Circuit Judge</u>.  Douglas Ellison pled guilty to violating 18 U.S.C. § 2113(a), the federal bank robbery statute. In this appeal, he challenges his 10-year prison sentence.  We affirm.

**I.**

On August 20, 2014, Ellison was indicted in the United States District Court for the District of New Hampshire on one count of violating § 2113(a).  That provision reads:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny --
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

The indictment charged that Ellison "did knowingly and intentionally, <u>by force and violence, or by intimidation</u>, take

from the person and presence of another currency belonging to and in the care, custody, control, management, and possession of the Northeast Credit Union . . . [i]n violation of [§ 2113(a)]." (emphasis added). On November 25, 2015, Ellison pled guilty to that count.

At the change-of-plea colloquy, the District Court explained the elements of the offense to which Ellison was pleading guilty. Those elements were that Ellison "intentionally took money from the Northeast Credit Union in Manchester from a bank employee," that Ellison "used intimidation or force and violence . . . to obtain the money," and that "the deposits of the credit union were insured by the National Credit Union Administration." (emphasis added).

Prior to the sentencing hearing, the probation office prepared a presentence investigation report ("PSR"). The PSR calculated the sentencing range applicable to Ellison under the United States Sentencing Guidelines. According to the PSR, Ellison was, in consequence of his prior convictions, in criminal history category VI. The PSR also determined that, under the guidelines, Ellison's total offense level was 29. The PSR then calculated the applicable guidelines sentencing range for Ellison to be 151 to 188 months' imprisonment.

Ellison filed an objection to the PSR. Ellison argued that the PSR wrongly based the determination that his total offense

level was 29 on a finding that he was a career offender under U.S.S.G. § 4B1.1(a).  The career offender guideline provides that:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  At the time that Ellison was sentenced, the career offender guideline defined a crime of violence as follows:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (Nov. 1, 2015).[1]

The first subpart of this definition is commonly referred to as the force clause.  The trailing portion of the second subpart of the definition, which follows the list of

---

[1] As of August 1, 2016, that provision was revised such that subpart (2) now reads: "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."

- 4 -

enumerated qualifying offenses, is commonly referred to as the residual clause.

Ellison argued that, because the offense for which he was convicted could be committed by "intimidation," that offense did not have as an element the "use, attempted use, or threatened use of physical force against another." Accordingly, Ellison argued that the offense for which he was convicted did not qualify as a "crime of violence" under the force clause of the definition set forth in the career offender guideline. He also contended that, after the Supreme Court's decision in <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015), the residual clause of the career offender guideline is void because it is unconstitutionally vague. Thus, Ellison argued, the offense for which he was convicted did not qualify as a "crime of violence."

Without the career offender designation, Ellison further argued, his applicable total offense level would have been 21, rather than 29. And, Ellison argued, if the career offender guideline enhancement had not been applied to him, his applicable guidelines range would have been 77 to 96 months' imprisonment, rather than 151 to 188 months' imprisonment, given that Ellison did not contest the PSR's statement that his criminal history category was VI.

Ellison's sentencing hearing was held on April 18, 2016. The District Court found that, as the government had argued, the

offense for which Ellison was convicted did qualify as a crime of violence under the force clause of the career offender guideline. On that basis, the District Court concluded that, as the PSR had determined, Ellison's total offense level was 29 and that the applicable guidelines range for his sentence was 151 to 188 months' imprisonment. The District Court then sentenced Ellison to a term of 120 months' imprisonment.

Ellison now appeals the District Court's determination that the offense for which he was convicted qualified as a crime of violence under the career offender guideline. Ellison raised this same legal issue below, so we review the District Court's decision de novo. United States v. Collins, 811 F.3d 63, 66 (1st Cir. 2016).

## II.

To challenge his career offender designation on appeal, Ellison initially argued both that the offense for which he was convicted did not qualify under the force clause of the career offender guideline and that the residual clause of the career offender guideline is void because it is unconstitutionally vague. After he filed his appellate brief, however, the Supreme Court decided Beckles v. United States, 137 S. Ct. 886 (2017). There, the Court ruled that advisory guidelines are not subject to constitutional vagueness challenges. Because the career offender guideline that was applied to Ellison was advisory, Ellison no

longer presses the contention that the guideline's residual clause is unconstitutionally vague.  Instead, in the wake of Beckles, Ellison submitted a supplemental brief in which he argues that, notwithstanding Beckles, Johnson established that "residual clause determinations are guesswork and the [residual clause] cannot be clearly and consistently interpreted and applied," such that "it is procedural error and an abuse of discretion to calculate the guideline range based on an attempt to interpret and apply the residual clause." (citing Johnson, 135 S. Ct. at 2558-60, 2562-63).

We need not decide here how the residual clause in the career offender guideline applies post-Beckles.  For, as we will explain, the offense for which Ellison was convicted qualifies as a "crime of violence" under the career offender guideline's force clause.  Thus, for that reason, the District Court did not err in applying the career offender guideline to Ellison.

## III.

The parties agree that § 2113(a) sets forth as a separate offense "by force and violence, or by intimidation, tak[ing], or attempt[ing] to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association," and that Ellison was convicted of this offense.

Accordingly, the question for us is whether this offense -- violating § 2113(a) by "force and violence, or intimidation" -- qualifies as a crime of violence under the force clause of the career offender guideline. See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).

To resolve that question, we must determine whether violating § 2113(a) by "force and violence, or intimidation" has as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). And, as the text of the guideline indicates, we thus must examine the elements of the offense, rather than the conduct that this particular defendant engaged in in committing the offense. See United States v. Ramos-González, 775 F.3d 483, 504 (1st Cir. 2015). In undertaking that elements-based review, moreover, we must determine whether the least serious conduct that the offense's elements encompass would require such a use or threatened use of physical force. For, under the "categorical approach" that we must apply, the offense qualifies as a "crime of violence" only if the least serious conduct encompassed by the elements of the offense still falls within the guideline's force clause. United States v. Armour, 840 F.3d 904, 908 (7th Cir. 2016).

Ellison contends that, because the phrase "force and violence, or intimidation" is set forth in the disjunctive in

- 8 -

§ 2113(a), the question is whether "intimidation" has as an element a "threatened use of physical force."[2] The government does not disagree. But the government contends, relying in part on the rulings of a number of our sister circuits, that "intimidation" under § 2113(a) does have as an element the "use, attempted use, or threatened use of physical force against the person of another." See United States v. McNeal, 818 F.3d 141, 153 (4th Cir. 2016) (holding that "a taking 'by intimidation' involves the threat to use [physical] force"); United States v. McBride, 826 F.3d 293, 296 (6th Cir. 2016) ("The defendant must at least know that his actions would create the impression in an ordinary person that resistance would be met by force. A taking by intimidation under § 2113(a) therefore involves the threat to use physical force."); United States v. Jenkins, 651 Fed. App'x 920, 924 (11th Cir. 2016) (stating that "intimidation occurs when an ordinary person in the teller's position could reasonably infer a threat of bodily harm

---

[2] Ellison understandably does not argue that committing the offense by means of "force and violence," rather than "intimidation," would not necessarily involve the "use, attempted use, or threatened use of physical force against the person of another." We also note that Black's Law Dictionary defines "intimidation" as "unlawful coercion; extortion." Black's Law Dictionary 949 (10th ed. 2009). However, the statute includes both "by force and violence, or intimidation" and "by extortion" as separate means of committing the offense. 18 U.S.C. § 2113(a). Ellison makes no argument that "intimidation" in § 2113(a) includes extortion.

from the defendant's acts" (quoting United States v. Kelley, 412 F.3d 1240, 1244 (11th Cir. 2005))).

In countering the government, Ellison makes a number of arguments, the first of which is that "intimidation" merely requires that the perpetrator induce "fear" in the victim and not that the perpetrator threaten -- either explicitly or implicitly -- the victim with bodily harm.  As a result, Ellison contends, even if a threat of bodily harm constitutes a "threatened use of physical force" for purposes of the career offender guideline's definition of a "crime of violence," "intimidation" under § 2113(a) does not require that there be a threat of that kind.

Ellison relies for this argument primarily on our decision in United States v. Henson, 945 F.2d 430 (1st Cir. 1991).  In that case, a defendant challenged the sufficiency of the evidence for his convictions on three counts of violating § 2113(a) by means of "force and violence, or by intimidation," for three separate occasions on which he had delivered an emphatic note demanding money to a bank teller, but did not display a weapon or make an explicit threat of bodily harm.  Id. at 439.  In explaining why the evidence sufficed to support the convictions, we reasoned that "[i]ntimidation is conduct 'reasonably calculated to produce fear.'"  Id. (quoting United States v. Harris, 530 F.2d 576, 579 (4th Cir. 1976)).

But, Henson did not hold that a threat of bodily harm need not be made at all in order for a defendant to have committed the bank robbery by "intimidation." Henson indicated only that threats of bodily harm need not be explicit. In fact, in stating generally that "[i]ntimidation is conduct 'reasonably calculated to produce fear,'" id. (quoting Harris, 530 F.2d at 579), Henson cited as support for that proposition United States v. Alsop, 479 F.2d 65, 66 (9th Cir. 1976), which Henson described as holding that "taking in such a way as to place an ordinary person in fear of bodily harm constitutes 'intimidation.'" Henson, 945 F.2d at 439 (emphasis added). In addition, in addressing the count for which there was testimony that the defendant had handed a teller a note saying "put fifties and twenties into an envelope now!!," id., Henson pointed out that:

> [a]lthough . . . no threat of bodily harm was expressed, a rational juror reasonably could find that Henson's emphatic written demand for the immediate surrender of the bank's money was enough to cause fear in an ordinary person under these circumstances. . . . Neither the actual or threatened display of a weapon, nor an explicit threat of force, is essential to establish intimidation under the statute.

Id. at 439-40 (emphasis added). And, finally, in the course of addressing the other two counts at issue in that case, Henson noted that the evidence regarding what the defendant had said to the bank teller in each instance was sufficient to qualify as

- 11 -

"intimidation," at least for the purposes of our review for manifest injustice, id. at 439 n.8, because "[f]rom the perspective of an ordinary person confronted with the predicament in which these tellers suddenly found themselves, [the defendant's] communications clearly were sufficient to raise fears of bodily harm."  Id. at 440 (emphasis added).

Moreover, following Henson, we made clear in United States v. Burns, 160 F.3d 82 (1st Cir. 1998), that "[c]ourts generally evaluate levels of intimidation under an objective standard: whether a reasonable person in the same circumstances would have felt coerced by a threat of bodily harm."  Id. at 85 (emphasis in original); see also Jenkins, 651 Fed. App'x at 924 (stating that "intimidation occurs when an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts" (quoting Kelley, 412 F.3d at 1244)). And, Ellison does not explain how that statement in Burns accords with his contention that "intimidation" may be proved even in the absence of any such threat.

Simply put, Ellison fails to identify a single case -- either of our own or of any other court -- that holds that "intimidation" may be proved absent any action by the defendant that would, as an objective matter, cause a fear of bodily harm. And, in light of Henson and Burns, and the weight of precedent from other courts, we agree with the government that proving

"intimidation" under § 2113(a) requires proving that a threat of bodily harm was made.

As a fallback argument, Ellison contends that, even if "intimidation" requires proof of at least a threat of bodily harm, a threat to poison or to withhold vital medicine both qualify as a threat of bodily harm. Yet, Ellison argues, such a threat is not a "threatened use of physical force" due to the indirect manner in which the threatened injury would be visited upon the victim. Accordingly, Ellison contends, his conviction under § 2113(a) cannot qualify as one for a crime of violence under the career offender guideline.

This argument, however, is undermined by United States v. Castleman, 134 S. Ct. 1405 (2014). There, the Supreme Court made clear that poisoning or infecting with a disease does constitute a "use or attempted use of physical force" under 18 U.S.C. § 921(a)(33)(A)(ii), id. at 1414-15, notwithstanding that the "harm occurs indirectly." Id. at 1415. The Court explained that the "use of force" is "the act of employing poison knowingly as a device to cause physical harm." Id. And, while § 921(a)(33)(A)(ii) is a distinct provision that uses somewhat different words than the force clause of the definition of a "crime of violence" in the career offender guideline, Ellison makes no argument as to why the logic of Castleman is inapplicable here. Nor does any such argument occur to us. Indeed, in a recent case

interpreting the similarly worded force clause in the definition of a "violent felony" in ACCA, 18 U.S.C. § 924(e)(2)(B)(i), we rejected the same argument Ellison asks us to accept. See United States v. Edwards, 857 F.3d 420, 427 (1st Cir. 2017) ("Edwards is dead wrong in characterizing the poisoning as an application of indirect force. . . . The force required to apply poison to a victim -- while certainly lower in newtons than the force of a bullet -- is still force.").

We also are unpersuaded by Ellison's argument that "intimidation" could encompass a threat to withhold life-saving medicine and thus that "intimidation" need not have as an element a "threatened use of physical force." We are not supposed to imagine "fanciful, hypothetical scenarios" in assessing what the least serious conduct is that the statute covers. United States v. Fish, 758 F.3d 1, 6 (1st Cir. 2014). Rather, we must find "a realistic probability, not a theoretical possibility, that the [government] would apply its statute to conduct that falls outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Ellison offers no realistic probability of the statute applying to the commission of a bank robbery through a threatened withholding of life-saving treatment.

Finally, Ellison contends that violating § 2113(a) by "force and violence, or intimidation" does not qualify as a "crime of violence" under the career offender guideline for yet another

- 14 -

reason.  He argues that, to prove a violation of § 2113(a) by "intimidation," the government need prove only that a reasonable person would have felt intimidated, and not that the defendant knew that his actions would be intimidating to a reasonable person. And because Ellison contends that § 2113(a) lacks any mens rea element with respect to intimidation, a conviction for violating § 2113(a) by means of intimidation cannot qualify as one for a crime of violence, given the logic of our decision in Fish, 758 F.3d at 4.

Ellison points out, in this regard, that Fish concerned whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 16(b), which defines a "crime of violence" to include crimes that "involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Yet, Ellison notes, we held in Fish that the reckless variant of assault and battery with a deadly weapon under Massachusetts law did not qualify as a "crime of violence" because recklessness "falls short of the mens rea required under section 16(b)."  Id. at 16 (citing 18 U.S.C. § 16(b)).[3]  Ellison accordingly contends that -- insofar as there

_____

[3] In so holding in Fish, we relied on the Supreme Court's statement in Leocal v. Ashcroft, 543 U.S. 1, 9-10 (2004), that "'use' requires active employment," and "[w]hile one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical

is no mens rea requirement at all with respect to "intimidation" under § 2113(a) -- Fish's logic requires the conclusion that a conviction for violating § 2113(a) by "intimidation" does not qualify as a "crime of violence" under the career offender guideline.

But Ellison's contention that § 2113(a) does not impose a mens rea requirement as to the element of "intimidation" is mistaken. In Carter v. United States, 530 U.S. 255 (2000), the Supreme Court addressed whether the element of "intent to steal or purloin" that expressly appears in § 2113(b) was impliedly contained in § 2113(a) as well. The Court explained that § 2113(a) does not contain that element, because "[t]he presumption in favor of scienter requires a court to read into a statute only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" Id. at 269 (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994)). And, the Court concluded, that presumption "demands only that we read [§ 2113(a)] as requiring proof of general intent -- that is, that the defendant possessed knowledge with respect to the actus reus of the crime (here, the taking of property of another by force and violence or

---

force against another person by accident." We reasoned that "although the Supreme Court [in Leocal] explicitly limited its reasoning to negligence-or-less crimes, Leocal's rationale would seem to apply equally to crimes encompassing reckless conduct wherein force is brought to bear accidentally, rather than being actively employed." Fish, 758 F.3d at 9.

- 16 -

intimidation)." Id. at 268. Thus, the Court, at the very least, strongly suggested that the offense of committing bank robbery by "force and violence or intimidation" does have an implicit mens rea element of general intent -- or knowledge -- as to the actus reus of the offense.

To be sure, as Ellison points out, two circuits, post-Carter, have continued to state that the government need not show that the defendant knew that his actions would be intimidating in order to secure a conviction under § 2113(a). See Kelley, 412 F.3d at 1244 ("[A] defendant can be convicted under § 2113(a) even if he did not intend for an act to be intimidating."); United States v. Yockel, 320 F.3d 818, 824 (8th Cir. 2003) ("[W]hether or not [the defendant] intended to intimidate the teller is irrelevant in determining his guilt.").[4] But Kelley simply cited to Yockel and two pre-Carter cases in support of that proposition, 412 F.3d at 1244, and thus did not address the passage that we just reviewed from Carter that suggests the opposite. And Yockel relied on the fact that Carter stated that the statute requires only proof of "general intent" -- as opposed to "specific intent" -- without explaining how the fact that § 2113(a) contains only that more limited mens rea requirement undermines the government's position

---

[4] Ellison also notes that courts had ruled similarly pre-Carter, too. See, e.g., United States v. Foppe, 993 F.2d 1444, 1451 (9th Cir. 1993).

- 17 -

that § 2113(a) must be read to require knowledge with respect to the element of "force and violence, or intimidation." After all, Carter described the general intent element that the presumption in favor of scienter would "demand" as one that requires that "the defendant possessed knowledge with respect to the actus reus of the crime (here, the taking of property of another by force and violence or intimidation)." 530 U.S. at 268. We thus do not see how Yockel can be squared with Carter. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991) ("[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement.").

We therefore agree with the two circuits that have interpreted the Court's decision in Carter to require that "the government must prove not only that the accused knowingly took property, but also that he knew that his actions were objectively intimidating." McNeal, 818 F.3d at 155; see also McBride, 826 F.3d at 296 ("The defendant must at least know that his actions would create the impression in an ordinary person that resistance would be met by force."). Accordingly, we reject Ellison's mens rea-based argument as to why his conviction under § 2113(a) does not qualify as one for a "crime of violence" under the force clause of the definition set forth in the career offender guideline.

## III.

For the foregoing reasons, the sentence is **affirmed**.