# United States Court of Appeals
## For the First Circuit

No. 16-1933

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID A. FRATES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

Ian Gold, on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, and
William D. Weinreb, Acting United States Attorney, on brief for
appellee.

July 18, 2018

**LIPEZ**, **Circuit Judge**.  Appellant David Frates pleaded guilty to one count of federal armed bank robbery, in violation of 18 U.S.C. § 2113(a) & (d).  At his sentencing hearing, the district court applied the United States Sentencing Guidelines' career offender enhancement, increasing Frates's guideline sentencing range to 188-235 months' imprisonment.  The court varied downward and sentenced Frates to 132 months' imprisonment.

Frates appeals this sentence, challenging his classification as a career offender, and alternatively asking us to vacate his sentence in light of a recently enacted amendment to the Guidelines.  We find no error with the district court's application of the Guidelines.  Nonetheless, we exercise our discretion under United States v. Godin (Godin II), 522 F.3d 133 (1st Cir. 2008), and United States v. Ahrendt, 560 F.3d 69 (1st Cir. 2009), to vacate Frates's sentence and remand to allow the district court to consider the United States Sentencing Commission's current policy position on who qualifies as a career offender.

**I.**

This case arises at a peculiar moment in the history of the Sentencing Guidelines' career offender enhancement.  That enhancement increases the sentencing ranges of certain defendants whose offense of conviction was "either a crime of violence or a controlled substance offense," and who have at least two such prior

- 2 -

convictions.  U.S. Sentencing Guidelines Manual § 4B1.1 (2016).

At the time of Frates's sentencing in July 2016, the Guidelines

defined the term "crime of violence" as follows:

> The term "crime of violence" means any offense
> under federal or state law, punishable by
> imprisonment for a term exceeding one year,
> that—
>
> (1)  has as an element the use, attempted use,
> or threatened use of physical force against
> the person of another, or
>
> (2)  is burglary of a dwelling, arson, or
> extortion, involves use of explosives, or
> otherwise involves conduct that presents a
> serious potential risk of physical injury to
> another.

Id. § 4B1.2(a) (2015).  Subsection (1) of this definition is known

as the "force clause," the segment of subsection (2) listing

specific crimes is known as the "enumerated offenses clause," and

the segment of subsection (2) beginning with "otherwise involves"

is known as the "residual clause."  See, e.g., United States v.

Wurie, 867 F.3d 28, 31, 36 (1st Cir. 2017); United States v.

Ramírez, 708 F.3d 295, 300 (1st Cir. 2013).  The commentary to

section 4B1.2 further specified a number of offenses that

sentencing courts "essentially treat[ed] . . . as additional

enumerated offenses."  United States v. Ball, 870 F.3d 1, 5 (1st

Cir. 2017); U.S. Sentencing Guidelines Manual § 4B1.2, cmt. n.1

(2015) (listing, for example: murder, kidnapping, aggravated

assault, and robbery).

The Guidelines' "crime of violence" definition mirrored the Armed Career Criminal Act's ("ACCA") definition of "violent felony." 18 U.S.C. § 924(e)(2)(B). The ACCA imposes a mandatory minimum 15-year term of imprisonment on any person convicted of being a felon in possession of a firearm who has three prior violent felony convictions. Id. §§ 922(g), 924(e)(1). Its definition of "violent felony" includes a force clause, an enumerated offenses clause, and a residual clause, all materially identical to the Guidelines' crime of violence definition. Id. § 924(e)(2)(B).

In June 2015, the Supreme Court held that the residual clause of the ACCA's violent felony definition was unconstitutional. Johnson v. United States, 135 S. Ct. 2551, 2563 (2015). It reasoned that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." Id. at 2557. Sentencing judges interpreting the residual clause faced "grave uncertainty" about how to estimate the risk of injury involved in a crime, and also what level of risk sufficed to qualify a crime as a violent felony. Id. at 2257-58. These vagaries were more than the strictures of due process could tolerate: "Invoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process." Id. at 2560.

- 4 -

Not surprisingly, in the wake of Johnson, there were challenges to the constitutionality of the Guidelines' crime of violence definition.  Most of the circuit courts to address the issue held that section 4B1.2(a)'s identically-worded residual clause was unconstitutionally vague.  See United States v. Hurlburt, 835 F.3d 715 (7th Cir. 2016); United States v. Calabretta, 831 F.3d 128 (3d Cir. 2016); United States v. Pawlak, 822 F.3d 902 (6th Cir. 2016); United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015).  But see United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015).  In the First Circuit, the government routinely took the position that Johnson's reasoning extended to the crime of violence definition, and conceded that section 4B1.2(a)'s residual clause was void.  See, e.g., Ball, 870 F.3d at 3 (1st Cir. 2017); United States v. Thompson, 851 F.3d 129, 131 (1st Cir. 2017).

This "ongoing litigation and uncertainty resulting from the Johnson decision" prompted the United States Sentencing Commission to adopt an amendment eliminating the residual clause from the crime of violence definition.  U.S Sentencing Guidelines Manual supp. to app. C, Amend. 798.  The amendment also moved some of the offenses listed in the commentary to section 4B1.2 into the body of section 4B1.2(a)(2).  Id.  Amendment 798 took effect on November 1, 2016 -- a few months after Frates's sentencing -- and the Commission declined to make the amendment retroactive.  See

Wurie, 867 F.3d at 35 n.7 (noting that the Commission chose to not make Amendment 798 retroactive).

Four months after Amendment 798 took effect, the Supreme Court rejected a void-for-vagueness challenge to the crime of violence definition's residual clause. Beckles v. United States, 137 S. Ct. 886, 890 (2017). Distinguishing Johnson, the Court explained that the ACCA "fix[ed] the permissible sentences for criminal offenses," while the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." Id. at 892. Since the Guidelines are discretionary, they are "not amenable to a vagueness challenge," and thus "§ 4B1.2(a)'s residual clause is not void for vagueness." Id. at 894-95.

The result in Beckles creates a quirk for defendants (1) sentenced pursuant to section 4B1.2(a)'s residual clause prior to Amendment 798, and (2) whose appeals were pending when the amendment became effective. Although stricken by the Sentencing Commission, the residual clause remains valid as applied to them. Hence, they will be the last group subjected to the disfavored -- yet constitutional -- residual clause. This is the context in which Frates appeals his sentence.

## II.

Frates asserts that neither his offense of conviction nor his prior convictions qualify as crimes of violence. As to

his present conviction for federal armed bank robbery, he suggests that the crime does not fit within the force clause, and that we should remand to give the district court the opportunity to determine in the first instance whether the residual clause covers the crime. Regarding his prior convictions, he argues that his four Massachusetts unarmed robbery convictions do not count as crimes of violence under any of section 4B1.2(a)'s clauses, leaving him without the two requisite crimes of violence necessary to trigger the career offender enhancement. We address these contentions in turn.

## A. Frates's Offense of Conviction

It is axiomatic that in determining whether a crime fits within the force clause, we look to the elements that comprise the offense, rather than the defendant's conduct in committing the crime. See, e.g., United States v. Ramos-González, 775 F.3d 483, 504 (1st Cir. 2015). This analysis involves taking a "categorical approach" and determining whether the elements of the defendant's crime of conviction necessarily require the use, attempted use, or threatened use of physical force against another person. See, e.g., United States v. Martinez, 762 F.3d 127, 133 (1st Cir. 2014).[1]

---

[1] We employ a "modified categorical approach" when the statute sets forth alternative elements of a crime, some of which are broader than the crime of violence definition. See Descamps v. United States, 570 U.S. 254, 257 (2013); Ramos-González, 775 F.3d at 505. This approach allows us to consult a limited set of judicial records to determine which set of elements provided the

An offense qualifies as a crime of violence under the force clause only if "the least serious conduct encompassed by the elements of the offense" involves the requisite physical force.  United States v. Ellison, 866 F.3d 32, 35 (1st Cir. 2017).

The federal armed bank robbery statute, in relevant part, penalizes "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, . . . any property or money . . . belonging to . . . any bank . . . ," and who, in committing such an offense, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device."  18 U.S.C. § 2113(a) & (d).  Frates argues that this offense can be committed without the use, attempted use, or threatened use of physical force.  He believes that "intimidation" does not require force, and imagines that a robber could use poison, or withhold medication, to accomplish the crime without employing force.  He further asserts that the force clause requires an intent mens rea, and that intimidation can be accomplished unintentionally.

---

basis for the defendant's conviction.  Ramos-Gonzalez, 775 F.3d at 505; see also Shepard v. United States, 544 U.S. 13, 26 (2005) (listing the charging document, plea agreement, plea transcript, and "comparable judicial record[s]" as permissible documents). The parties agree that we should employ the categorical approach, and we accept their position without deciding the issue.  See United States v. Starks, 861 F.3d 306, 317 (1st Cir. 2017).

Shortly after Frates filed his opening brief staking out these positions, we rebuffed identical arguments in Ellison, 866 F.3d at 36-38. The defendant in Ellison argued that his conviction for federal unarmed robbery did not qualify as a crime of violence under the force clause. Id. at 34. We squarely rejected his argument, concluding that section 2113(a) "requires proving that a threat of bodily harm was made." Id. at 37. In doing so, we specifically spurned the "threat to poison or to withhold vital medicine" hypotheticals also offered here by Frates. Id. We likewise rebuffed the same mens rea argument raised by Frates, finding that section 2113(a) "does have an implicit mens rea element of general intent -- or knowledge -- as to the actus reus of the offense." Id. at 39.

Ellison thus undermines Frates's assertion that federal armed bank robbery does not require the use, attempted use, or threatened use of force. Indeed, a conviction for federal unarmed bank robbery -- at issue in Ellison -- is a lesser included offense to federal armed bank robbery. See United States v. Spinney, 65 F.3d 231, 235 n.3 (1st Cir. 1995). As we are bound by this prior panel decision, e.g., Wurie, 867 F.3d at 34, we need not probe the matter further: federal armed bank robbery is a crime of violence under section 4B1.2(a)'s force clause.

**B. Frates's Prior Convictions**

The Massachusetts statute criminalizing unarmed robbery provides:

> Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years.

Mass. Gen. Laws ch. 265, § 19(b). The government concedes that Frates's unarmed robbery convictions do not qualify as crimes of violence under the force clause and the enumerated offenses clause. Indeed, it acknowledges our holding in Starks that Massachusetts unarmed robbery does not qualify under the ACCA's force clause, 861 F.3d at 319-20, and admits that the enumerated offense of "robbery" does not encompass the crime, see U.S. Sentencing Guidelines Manual § 4B1.2, cmt. n.1 (2015). Thus, we assess only whether the convictions qualify as crimes of violence under the prospectively defunct, but retrospectively applicable, residual clause.

Our precedent compels us to conclude that Massachusetts unarmed robbery is a crime of violence under the residual clause. In United States v. De Jesus, we held that the Massachusetts offense of larceny from the person qualified as a crime of violence under the residual clause. 984 F.2d 21, 22 (1st Cir. 1993).

Massachusetts classifies larceny from the person as a lesser included offense of unarmed robbery.  See Commonwealth v. Glowacki, 499 N.E.2d 290, 294 (Mass. 1986); Commonwealth v. Sheppard, 537 N.E.2d 583, 585 (Mass. 1989).  Hence, Massachusetts unarmed robbery is necessarily a crime of violence under the residual clause.

Frates urges us to abandon this otherwise straightforward analysis and overrule De Jesus.  He argues that De Jesus was based on the "ordinary case" method for determining whether an offense fits within the residual clause, and that Johnson rendered that methodology invalid.  We disagree.

Under the ordinary case method, we assess whether the elements of the crime, in the ordinary case, "(1) present a risk of physical injury similar to the risk presented by the clause's enumerated offenses and (2) [are] similar 'in kind' to those offenses."  United States v. Holloway, 630 F.3d 252, 260 (1st Cir. 2011) (quoting United States v. Giggey, 551 F.3d 27, 41-42 (1st Cir. 2008) (en banc)); see also Ramírez, 708 F.3d at 305 (applying the ordinary case method).  Although Johnson was critical of this approach, see 135 S. Ct. at 2557-58, we recently rejected the contention that the Court's criticism in the ACCA context allows us to overrule prior decisions applying the ordinary case method to section 4B1.2(a)'s residual clause.  In Wurie, the defendant asked us to reconsider our holding in United States v. Glover, 558 F.3d 71, 80 (1st Cir. 2009), that Massachusetts assault and battery

- 11 -

with a dangerous weapon was a crime of violence under the residual clause. 867 F.3d at 32. We explained that Johnson did not "necessarily reject[] the 'ordinary case' analysis in all of its applications." Id. at 35. Rather, the Court's criticism of that methodology was "only one part of its conclusion as to why the residual clause of the ACCA was unconstitutionally vague." Id. at 34. Since the Court later declined to extend Johnson's holding to the crime of violence residual clause, Beckles, 137 S. Ct. at 890, we were "not persuaded that Johnson 'offers a sound reason for believing' that the panel in Glover 'would change its collective mind' in light of Johnson." Wurie, 867 F.3d at 35 (quoting United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008)).

Wurie thus undermines Frates's attempt to rely on Johnson to circumvent De Jesus. Instead, De Jesus remains controlling, and requires us to conclude that Massachusetts unarmed robbery is a crime of violence under the residual clause. As both Frates's offense of conviction and his prior unarmed robbery convictions were crimes of violence under the version of the Guidelines applicable at the time of his sentencing, the district court did not err in applying the career offender enhancement.[2]

---

[2] The district court also concluded that Frates's prior conviction for Massachusetts breaking and entering was a crime of violence. Frates did not appeal this decision.

Once we have concluded that a district court did not err in sentencing a defendant, it is ordinarily the end of the matter. In a narrow category of cases, however, we have discretion to vacate a correctly imposed sentence and remand to allow the sentencing court to consider the United States Sentencing Commission's revised policy positions, as demonstrated by its subsequent amendment of the Guidelines. For the reasons detailed below, this is precisely the type of case in which exercising that discretion is warranted.

## A. The Godin/Ahrendt Doctrine

Our discretion to remand in such situations derives from a pair of cases involving Amendment 709 to the Guidelines. Godin II, 522 F.3d at 133; Ahrendt, 560 F.3d at 69. Amendment 709 "restat[ed] the rules for determining when multiple crimes are counted as one for criminal history purposes." Godin II, 522 F.3d at 135; see also U.S. Sentencing Guidelines supp. to app. C, Amend. 709 (2007). Prior to that amendment, the First Circuit treated crimes for which the sentence was imposed on the same date as separate offenses if they were not part of a common scheme or plan, or were not consolidated for trial or sentencing. See, e.g., United States v. Godin (Godin I), 489 F.3d 431, 434-35 (1st Cir. 2007); United States v. Correa, 114 F.3d 314, 317 (1st Cir. 1997). Amendment 709 rendered this approach obsolete by specifying that

offenses committed without an intervening arrest are treated as a single sentence when the sentences were imposed on the same day. See U.S. Sentencing Guidelines supp. to app. C, Amend. 709 (2007); U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (2007). The amendment went into effect on November 1, 2007, after Godin and Ahrendt were sentenced but before their appeals were final.[3] See Godin II, 522 F.3d at 134-35; Ahrendt, 560 F.3d at 78-79. Since the Sentencing Commission did not make Amendment 709 retroactive, the amendment would not ultimately change either defendant's guideline sentencing range. See Godin II, 522 F.3d at 134-35 (noting that Amendment 709 was not retroactive).

Nonetheless, we vacated and remanded both of their sentences to give the district courts the opportunity to weigh the Sentencing Commission's revised policy as a discretionary factor in imposing sentence. Under the Commission's changed thinking, Godin and Ahrendt would have been subject to significantly lower guideline ranges. Godin had two prior burglary convictions for which she was sentenced on the same date. Id. at 134. Counting these offenses as a single sentence would have removed her from the career offender category and decreased her guideline

---

[3] More specifically, Godin was sentenced in April 2006, we first decided her appeal in June 2007, and we adjudicated her petition for rehearing in April 2008. Godin II, 522 F.3d at 133-34. Ahrendt was sentenced in January 2006 and we resolved his appeal in March 2009. Ahrendt, 560 F.3d at 73.

sentencing range from 262-327 months' imprisonment to 121-130 months. Id. Ahrendt had committed three offenses in the same week, and he was sentenced for those crimes on the same date. Counting his offenses as a single sentence would have decreased his guideline range from 210-262 months' imprisonment to 168-210 months. See Ahrendt, 560 F.3d at 73; U.S. Sentencing Guidelines Manual § 5A (2005) (Sentencing Table).

Our decisions to vacate and remand in those cases were animated by two principal factors. The first involved the posture of the cases and the manner in which the Sentencing Commission chose to amend the Guidelines. In Godin II, we explained that "the posture of this case is peculiar: the amendment is not applicable retroactively, but neither has the pending appeal yet resulted in a final disposition." 522 F.3d at 135. The non-finality of Godin's sentence interacted with Amendment 709 to produce a procedural inequity. Amendment 709 would not alter Godin's guideline range because the amendment substantively changed the Guidelines and applied only prospectively. Id. However, if the Sentencing Commission had instead issued a clarifying amendment -- one that is "purely expository," United States v. Cabrera-Polo, 376 F.3d 29, 32 (1st Cir. 2004) -- we could have chosen to "alter our own prior reading of [the] newly clarified guideline" on appeal, and given Godin the benefit of the lower guideline range. Godin II, 522 F.3d at 135. Thus, without

- 15 -

a remand to allow the district court to consider the Commission's revised policy, Godin would have been "irremediably worse off because the Commission went further in her direction" by substantively revising the offending provision of the Guidelines instead of issuing a "mere clarification." Id. at 136.

The second factor that led us to vacate and remand in Godin and Ahrendt was the discretionary nature of the federal sentencing regime after United States v. Booker, 543 U.S. 220 (2005). Under federal sentencing procedures post-Booker, district courts begin by calculating a defendant's guideline sentencing range. See, e.g., Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016). This range is merely advisory. See Booker, 543 U.S. at 245. Courts then exercise their discretion to select a sentence -- either inside or outside of the advisory guideline range -- that is "sufficient, but not greater than necessary" to fulfill certain sentencing objectives. 18 U.S.C. § 3553(a). Godin and Ahrendt recognized that the Commission's current policy positions may be relevant at this second, discretionary, step of a district court's sentencing procedures, even when a non-retroactive amendment prevents the district court from altering the advisory guideline range calculated at the first step. See Godin II, 522 F.3d at 136; Ahrendt, 560 F.3d at 79.

Three more recent cases provide guidance on when we will choose to exercise our discretion under the Godin/Ahrendt

- 16 -

doctrine. The defendant in United States v. Matos, 611 F.3d 31 (1st Cir. 2010), asked us to vacate his sentence and remand to allow the district court to consider Amendment 709. Distinguishing Godin II and Ahrendt, we explained that "it was evident" in those cases "that if the Guidelines as amended . . . had been in effect at the time of the defendant's sentencing," the defendant would have been subjected to a lower sentencing range. Id. at 39. However, it was "far from clear" that Amendment 709 would have had any effect on Matos's sentence. Id. The district court would have had to "engage in fact-finding to determine whether the Amendment applie[d]." Id. Given the complexity of the district court's task on remand, we "conclude[d] that Godin and Ahrendt [did] not advocate in favor of remanding for resentencing." Id. at 39-40.

We recently applied this reasoning from Matos in a case involving Amendment 798. In Wurie, we explained that it was unclear whether the defendant would have benefitted from the intervening amendment. 867 F.3d at 36. On remand, the district court would have had to consider whether "at least two of Wurie's prior offenses . . . qualify as crimes of violence under the force clause." Id. This analysis would have been "much more complicated" than the "simple mechanistic change" involved in Godin II and Ahrendt. Id. at 36-37. We accordingly declined to vacate the defendant's sentence and remand for resentencing.

Lastly, we ordinarily will not use our discretion under the Godin/Ahrendt doctrine when the district court was aware of the proposed amendment at the time of the initial sentencing. See United States v. Adams, 640 F.3d 41, 43 (1st Cir. 2011). The court's awareness of the amendment extinguishes the "doubt triggering our concern in Godin and Ahrendt that the district court would reconsider the sentences in light of the now-revised thinking of the Commission." Id.

Godin II and Ahrendt thus establish a narrow doctrine that gives us discretion to vacate a defendant's sentence and remand when: (i) the Sentencing Commission adopts a substantive, non-retroactive amendment to the Guidelines; (ii) the amendment is adopted before the defendant's sentence becomes final on appeal; and (iii) the amendment would have lowered the defendant's guideline range if it had been in effect at the initial sentencing. However, we will ordinarily not exercise our discretion under Godin/Ahrendt when the district court's analysis on remand would be complex, or when the district court was aware of the amendment during the initial sentencing.

If we do remand a case pursuant to the Godin/Ahrendt doctrine, the district court is prohibited from recalculating the defendant's guideline range in light of the intervening amendment, lest it circumvent the Sentencing Commission's non-retroactivity determination. It may, however, consider the Commission's revised

policy position in exercising its discretion to select an appropriate sentence for the defendant.

**B. Vacating Frates's Sentence and Remanding for Resentencing**

The facts of this case squarely implicate our Godin/Ahrendt doctrine, and counsel in favor of exercising our discretion to vacate Frates's sentence and remand to the district court. Amendment 798 is a substantive, non-retroactive amendment that the Sentencing Commission enacted while Frates's appeal was pending. If the amendment had been in effect at the time of Frates's sentencing, his guideline range would have decreased from 188-235 months' imprisonment to 92-115 months. Indeed, the government concedes that Frates's prior convictions for Massachusetts unarmed robbery would not qualify as crimes of violence under Amendment 798.[4]

Given the government's concession, the sentencing process on remand will be "mechanistic," not complex. Wurie, 867 F.3d at 37. The district court will need to consider only whether the Sentencing Commission's current policy about who qualifies as a career offender affects its discretionary choice of sentence. Finally, there is no indication that the district court was aware of Amendment 798 at the time of sentencing.

---

[4] The government specifically conceded that Massachusetts unarmed robbery would not qualify as crimes of violence under section 4B1.2(a)'s force clause or under its enumerated crime of robbery.

- 19 -

The government advances three primary reasons why we should nonetheless decline to vacate Frates's sentence and remand for resentencing. All three are unpersuasive. First, the government argues that a line from the Supreme Court's decision in Dillon v. United States, 560 U.S. 817 (2010), undermines the Godin/Ahrendt doctrine. Dillon involved the question of whether a provision of the Guidelines that limited a court's discretion in sentence modification proceedings remained mandatory -- rather than advisory -- after Booker. 560 U.S. at 819-822. In holding that the provision was mandatory, the Court sought to establish that other provisions of the Guidelines likewise remained binding post-Booker. Id. at 830. It thus observed that "[n]o one disputes that the Commission's retroactivity determinations . . . are binding." Id.

The Godin/Ahrendt doctrine is entirely consistent with the Supreme Court's observation that the Sentencing Commission's retroactivity determinations are binding. Both Godin II and Ahrendt acknowledge that the Commission's pronouncement that Amendment 709 was non-retroactive bound the court. Godin II, 522 F.3d at 136 ("The original guideline range . . . remains applicable, because the amendment was substantive and non-retroactive."); Ahrendt, 560 F.3d at 79 ("Because Amendment 709 is non-retroactive, . . . Ahrendt is not entitled to the benefit of [the] amendment . . . ."). Indeed, the Godin/Ahrendt doctrine

- 20 -

necessarily presupposes that the Commission's retroactivity determinations are binding.  It only allows district courts to consider the Sentencing Commission's revised policies as a discretionary factor in resentencing defendants.

Second, the government contends that vacating and remanding in this case will effectively open the floodgates for defendants challenging their sentences "in light of Johnson."  This position is vastly overstated.  As we detailed above, the Godin/Ahrendt doctrine applies only to a narrow category of cases involving certain non-retroactive amendments that are adopted before a defendant's sentence becomes final on appeal.  Our holding here is thus potentially relevant to defendants sentenced pursuant to section 4B1.2(a)'s residual clause only if their sentences were not yet final when Amendment 798 went into effect in November 2017. We fail to see how -- as the government seems to suggest -- this case would apply more broadly to defendants challenging their sentences based on Johnson's invalidation of the ACCA's residual clause.

Third, the government contends that the district court's decision to vary downward from Frates's guideline sentencing range makes remanding his case for resentencing unnecessary.  Though "perhaps not irrelevant," a district court's decision to depart from a defendant's guideline range will not ordinarily be a significant factor in determining whether to remand under

- 21 -

Godin/Ahrendt.  Ahrendt, 560 F.3d at 80 (reasoning that the amount an amendment reduces a defendant's guideline range is not dispositive in deciding whether to remand).  A downward variance does not necessarily alter our "judgment that a different result might well be reached on remand," Adams, 640 F.3d at 43, as the Sentencing Commission's revised policy may lead a district court to vary further from a defendant's guideline range.  Indeed, the guideline range "anchor[s] . . . the district court's discretion," such that even when "the sentencing judge sees a reason to vary from the Guidelines . . . the Guidelines are in a real sense [still] the basis for the sentence." Molina-Martinez, 136 S. Ct. at 1346 (emphasis omitted) (quoting Peugh v. United States, 569 U.S. 530, 542, 549 (2013)).  The knowledge that the Sentencing Commission would choose a different "anchor" thus remains a relevant discretionary factor for district courts to consider even where they initially varied downward.

This case provides a prime example of this principle.  The district court varied downward based on Frates's history of substance abuse and mental health issues, and imposed a sentence of 132 months' imprisonment.  Under the Sentencing Commission's current thinking, that sentence would constitute an upward variance of 17 months.  The district court may well view this fact as reason to vary even more significantly from Frates's guideline range.

**IV.**

For these reasons, we "think it prudent to allow the [district] court the opportunity to consider the Sentencing Commission's updated views." Ahrendt, 560 F.3d at 80. We therefore vacate Frates's sentence and remand for resentencing consistent with this opinion. On remand, the court's initial calculation of Frates's guideline range remains in effect. The court is under no obligation to modify Frates's sentence if, in its discretion, it does not feel that modification is warranted.

So ordered.