While not yet addressed by the D.C. Circuit, other circuit courts have considered whether a § 2255 motion attacking the mandatory Guidelines' residual clause is timely if filed within a year of Johnson . The Third, Fourth, Sixth, Ninth and Tenth Circuits have interpreted Johnson as strictly limited to the ACCA and rejected petitions that, like Hammond's, challenged the mandatory Guidelines' residual clause, as "untimely." See United States v. Blackstone , 903 F.3d 1020, 1028 (9th Cir. 2018) ("As of now, however, Blackstone's motion is untimely."); United States v. Green , 898 F.3d 315, 322-23 (3d Cir. 2018) ("We hold that Green's motion is untimely in light of the plain language of 28 U.S.C. § 2255(f)(3)."); United States v. Greer , 881 F.3d 1241, 1249 (10th Cir. 2018) ("We agree with the well-reasoned decisions of our sister circuits and therefore hold that Mr. Greer's motion is untimely."); United States v. Brown , 868 F.3d 297, 299 (4th Cir. 2017) ("We are thus compelled to affirm the dismissal of Petitioner's motion as untimely under 28 U.S.C. § 2255(f)(3)."); Raybon v. United States, 867 F.3d 625, 627 (6th Cir. 2017) ("We conclude that his claim is not timely under 28 U.S.C. § 2255(f)(3)."). The First Circuit, in a slightly different posture, also evaluated the timeliness of a motion like Hammond's as a product of whether Johnson extends to the mandatory Guidelines, and "tentative[ly]" ruled that a motion like Hammond's filed within one year of Johnson could not be dismissed as untimely. Moore v. United States , 871 F.3d 72, 77, 77 n.3, 80 (1st Cir. 2017).[7]
The Seventh Circuit has also addressed the timeliness of a motion attacking the mandatory Guidelines' residual clause, but jettisoned the analytic approach proposed by the parties and seemingly used by other courts, of assessing the *40 procedural timeliness of the § 2255 petition by examining the scope of the newly recognized right. As the Seventh Circuit aptly observed, debating whether Johnson announced a right that applies to an enhanced sentence under the mandatory Guidelines "improperly reads a merits analysis into the limitations period." Cross v. United States , 892 F.3d 288, 293 (7th Cir. 2018). Section 2255(f)(3)'s limitation period "runs from 'the date on which the right asserted was initially recognized by the Supreme Court.' " Id. at 293-94 (emphasis in original). For timeliness, a petitioner "need only claim the benefit of a right that the Supreme Court has recently recognized." Id. at 294. Whether a petitioner successfully proves his entitlement is the separate, merits question. Cross , 892 F.3d at 294 ; see also United States v. Snyder , 871 F.3d 1122, 1126 (10th Cir. 2017) ("Whether or not Snyder can ultimately prevail on his motion, he asserts the right established in Johnson , to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause. Thus, his § 2255 motion, filed within a year of the Court's decision in Johnson , is timely under § 2255(f)(3)." (emphasis in original) ).[8] Otherwise, § 2255(f)(3)'s use of "asserted" would be superfluous. Cross , 892 F.3d at 294.
This Court agrees with the Seventh Circuit that the timeliness of a § 2255 motion is an independent inquiry from whether the motion seeks to vindicate a newly recognized right applicable to the petitioner. The courts that have viewed timeliness through the lens of Johnson 's scope settled on that approach by emphasizing § 2255(f)(3)'s second clause, which conditions relief under that section to motions claiming rights that have "been newly recognized by the Supreme Court." Blackstone , 903 F.3d at 1025-26 ; Green , 898 F.3d at 320-21 ; Greer , 881 F.3d at 1247 ; Brown , 868 F.3d at 301 ; Raybon , 867 F.3d at 625. This analysis falls short of grappling with Dodd , which made clear that timeliness under § 2255(f)(3) is exclusively a function of that provision's first clause: when "the right asserted was initially recognized by the Supreme Court."
*41 Dodd , 545 U.S. at 358, 125 S.Ct. 2478 ("Dodd's reliance on the second clause to identify the operative date is misplaced."); id. ("As long as the conditions in the second clause are satisfied so that [ § 2255(f)(3) ] applies in the first place, that clause has no impact whatsoever on the date from which the 1-year limitation period in [ § 2255(f)(3) ] begins to run."). Injecting into the timeliness analysis whether a right has in fact been newly recognized emphasizes the wrong clause.
Focusing on only the first clause, Congress ran the limitation period from when "the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3) (emphasis added). Of course, "[t]o 'assert' means '[t]o state positively' or '[t]o invoke or enforce a legal right.' Thus, in order to be timely under § 2255(f)(3), a § 2255 motion need only 'invoke' the newly recognized right, regardless of whether or not the facts of record ultimately support the movant's claim." Snyder , 871 F.3d at 1126 (quoting Assert , BLACK'S LAW DICTIONARY (10th ed. 2014) ); see also Cross , 892 F.3d at 294 ("[ Section 2255(f)(3) ] does not say that the movant must ultimately prove that the right applies to his situation; he need only claim the benefit of a right that the Supreme Court has recently recognized. An alternative reading would require that we take the disfavored step of reading 'asserted' out of the statute."). Running the limitation period from when the Supreme Court recognized the "right asserted," as the Seventh Circuit concluded, attaches significance to how a petitioner styles his claim. If the petitioner seeks the benefit of a right purportedly recognized by the Supreme Court within the preceding year, the petition is timely.
Although timeliness depends on only the right asserted, petitioners will not be able to flood the courts with frivolous assertions of newly recognized rights, as the Tenth Circuit feared. See Greer , 881 F.3d at 1245 ("Mr. Greer's interpretation of Snyder would require this court to find that, no matter what the underlying claim, any petitioner can avoid AEDPA's clear time limits simply by invoking a right newly recognized by the Supreme Court."). While a motion will be timely if filed within a year from the date "on which the right asserted was initially recognized by the Supreme Court," this motion may be summarily dismissed if the right has not been, in fact, either "newly recognized by the Supreme Court" or "made retroactively applicable to cases on collateral review." Dodd , 545 U.S. at 358, 125 S.Ct. 2478. That the second clause does not affect timeliness does not mean it has no role to play.
Although, as noted, the D.C. Circuit has not addressed this precise question, assessing timeliness by the right asserted comports with that court's warning not to conflate § 2255's preliminary forms of review with merits review. Indeed, the D.C. Circuit, on review of a motion for certification to file a successive § 2255 motion, which certification is proper only upon a prima facie showing that the motion contains "a new rule of constitutional law," rebuffed the government's argument that, because the petition "relies on an extension of Graham [v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) ]," the petition does not contain a new rule of constitutional law. In re Williams , 759 F.3d 66, 70 (D.C. Cir. 2014). The Court explained that "the government's argument that we should refuse certification of [petitioner's] Graham motion goes to the merits of the motion, asking us in effect to make a final determination of whether the holding in Graham will prevail for [petitioner]." Id. "[A] review of the merits at [the certification] stage is not required." Id. ; see also *42 United States v. Charles Booker , 240 F.Supp.3d 164, 169 (D.D.C. 2017) ("As Booker correctly notes, the government's position conflates (1) authorization to file a second or successive motion under Section 2255(h), (2) the time bar under Section 2255(f)(3), and (3) the merits of the motion.").
Hammond asserts that Johnson guarantees the right not to have a sentence fixed by a mandatory, but vague, definition of "crime of violence." Def.'s Supp. § 2255 Mot. at 2-3, 9; Def.'s Reply at 10-11. As noted, Johnson was decided on June 26, 2015 and Hammond's abridged motion was filed on June 20, 2016. Def.'s § 2255 Mot. Thus, the motion to vacate is timely.
Of course, as Dodd explains, Hammond has not met all § 2255(f)(3) requirements just because his motion is timely. Hammond still must establish that the claimed right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3) ; see also Dodd , 545 U.S. at 358, 125 S.Ct. 2478. In this case, § 2255(f)(3)'s independent conditions sufficiently overlap with the merits that discussion of those conditions is reserved for the merits portion of the opinion.
2. Procedural Default
The second procedural hurdle that the government constructs is procedural default. "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." United States v. Hughes , 514 F.3d 15, 17 (D.C. Cir. 2008). Cause for default exists, at a minimum, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel ...." Reed v. Ross , 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). At least three circumstances demonstrate novelty: (1) the Supreme Court explicitly overrules its own precedent; (2) the Supreme Court changes course on a "longstanding and widespread practice to which [the Supreme Court had] not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) the Supreme Court disapproves of a once-sanctioned practice. Id. at 17, 104 S.Ct. 2901 (quoting United States v. Johnson , 457 U.S. 537, 551, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) ). For prejudice, a petitioner "must at least demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.' " United States v. Pettigrew , 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting United States v. Dale , 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998) ) (emphasis and alternations in original). Prejudice analysis assumes the existence of an error. Id. at 1145.
Hammond did not appeal his conviction or sentence. Consequently, the government suggests, Hammond has procedurally defaulted the argument he now raises. Gov't's Opp'n at 11-12. Moreover, Hammond cannot establish cause for the default, the government insists, because "[f]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' " Id. at 12 (quoting Bousley v. United States , 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ). Nor can Hammond establish prejudice, according to the government, because the right he asserts has not been made retroactive. Id. Hammond responds in two ways. First, procedural default does not apply to sentence-specific challenges. Def.'s Reply at 3-6. Second, cause and prejudice exist here. Id. at 6-10.
Hammond marshals no precedent supporting his first argument, but draws from principles that have informed procedural default-primarily, judicial economy and finality-and urges that they are ill fit as *43 reasons against reopening a sentence. See id. at 4 ("When an error at sentencing is at issue, however, the problem of finality is lessened, for a resentencing is nowhere near as costly or as chancy an event as a trial." (quoting United States v. Saro , 24 F.3d 283, 288 (D.C. Cir. 1994) ) ); id. at 5-6 (" '[T]he cost of correction is so small' because '[a] ... resentencing, after all, doesn't require that a defendant be released or retried but simply allows the district court to exercise its authority to impose a legally permissible sentence." (quoting United States v. Sabillon-Umana , 772 F.3d 1328, 1334 (10th Cir. 2014) ) ). Resolving Hammond's sweeping proposition is unnecessary because the cause-and-prejudice standard is met and that alone is sufficient.
The constitutional right Johnson vindicated was unforeseeable: "[N]o one-the government, the judge, or the appellant-could reasonably have anticipated Johnson ." United States v. Redrick , 841 F.3d 478, 480 (D.C. Cir. 2016). Sure enough, Johnson overruled two of the Supreme Court's prior rulings. 135 S.Ct. at 2563 ("Our contrary holdings in James [v. United States , 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) ] and Sykes [v. United States , 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) ] are overruled."). Thus, Hammond's petition comfortably sits within Reed 's first example of novelty. Moreover, the prejudice visited upon Hammond is plain. Hammond was sentenced to 115 months' imprisonment for the firearm conviction, to run consecutively with a 240-month sentence on the armed robbery conviction, based on a mandatory Guidelines range of 92 to 115 months' imprisonment. Judgment, SOR, at 6. Hammond claims that if just one of his prior convictions does not qualify as a crime of violence, his Guidelines range for the firearm conviction is 77 to 96 months' imprisonment, and his overall consecutive sentence should be reduced. Def.'s Supp. § 2255 Mot. at 6, 10. The government does not contest the calculation. Thus, if Hammond's Johnson argument about the mandatory Guidelines' residual clause is right, which must be assumed for prejudice purposes, his sentence, in all likelihood, is too long.
Judges on this court, including the undersigned, universally have rejected the government's repeated effort to foreclose through procedural default habeas motions seeking the benefit of Johnson. See, e.g., United States v. Hammond , No. 92-cr-471 (BAH), 351 F.Supp.3d 106, 122-24, 2018 WL 6200897, at *10-11 (D.D.C. Nov. 28, 2018) (Howell, C.J.) (rejecting procedural default argument for post- Johnson § 2255 motion); United States v. West , 314 F.Supp.3d 223, 229 n.4 (D.D.C. 2018) (Leon, J.) (same); United States v. Taylor , 272 F.Supp.3d 127, 135-36 (D.D.C. 2017) (Kollar-Kotelly, J.) (same); United States v. Wilson , 249 F.Supp.3d 305, 315 (D.D.C. 2017) (Huvelle, J.) (same); United States v. Brown , 249 F.Supp.3d 287, 293 (D.D.C. 2017) (Sullivan, J.) (same); Charles Booker , 240 F.Supp.3d at 170-71 (Friedman, J.) (same). Nothing about this case justifies different treatment.
In sum, neither of the government's two proposed procedural defects bars review of Hammond's § 2255 motion. This motion to vacate will succeed or fail on its merits, the matter to which the Court now proceeds.
B. Hammond's Right to Resentencing
Clearing the procedural hurdles means only that Hammond's motion may be resolved on the merits. To succeed on the merits, Hammond must show (1) that Johnson itself requires invalidating sentences enhanced pursuant to a mandatory application of the Guidelines' residual *44 clause and (2) that the prior convictions subjecting Hammond to an enhanced sentence do not qualify as crimes of violence under either the Guidelines elements clause or enumerated-felonies clause. As discussed below, Hammond has satisfied only the first of those required showings.
1. Does Johnson Apply to the Mandatory Guidelines' Residual Clause?
Ordinarily, a § 2255 motion may be granted "[i]f the court finds that ... the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). For Hammond, however, relief depends on whether striking down his sentence would enforce the right recognized in Johnson or would announce a new right. That Hammond has such a heavy lift is the consequence of his petition being timely under only § 2255(f)(3), which requires withholding relief from otherwise timely motions unless the petitioner claims the benefit of a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id. § 2255(f)(3) ; see also Dodd , 545 U.S. at 358, 125 S.Ct. 2478.
Arguments about Johnson 's scope, which the parties raised as relevant to timeliness, are properly directed to this question. Hammond maintains that Johnson "announced the right not to have a sentence fixed by an unconstitutionally vague residual clause," Def.'s Reply at 10, leaving "no doubt that Johnson rendered the residual clause of the mandatory Guidelines unconstitutionally void for vagueness," Def.'s Supp. § 2255 Mot. at 13. By contrast, the government posits that Johnson is about the ACCA, see Gov't's Opp'n at 15-16, leaving open the constitutionality of sentences enhanced under the mandatory Guidelines' residual clause, id. at 16.[9]
Johnson itself is proper place to begin. In that case, the Supreme Court invalidated sentences enhanced pursuant to the ACCA's residual clause as violative of Due Process because that clause's indeterminacy "denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S.Ct. at 2557. The denial of fair notice occurs whenever a law "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime," and increases punishment based on an indecipherable "serious potential risk" standard." Id. at 2558.
Mandatory Guidelines sentences under the residual clause share each fault cited by the Supreme Court, according to Hammond. Def.'s Supp. § 2255 Mot. at 10-12. Like the ACCA, the mandatory Guidelines' fixed sentences. Id. at 10. Additionally, the mandatory Guidelines implicate Johnson 's twin concerns. Id. at 11-12. Hammond is right on each point. First, the mandatory Guidelines had the force of law. Booker , 543 U.S. at 233-34, 125 S.Ct. 738. Second, the mandatory Guidelines' residual clause assessed risk against the hypothetical ordinary case.
*45 United States v. Sheffield , 832 F.3d 296, 313 (D.C. Cir. 2016) ("[W]e apply the ACCA standard to determine whether an offense qualifies as a crime of violence under section 4B1.2" (quoting In re Sealed Case , 548 F.3d 1085, 1089 (D.C. Cir. 2008) ) ). Third, the mandatory Guidelines enhanced sentences when the past crime posed "serious potential risk," language identical to the ACCA's unworkable standard. See id. at 312 ; see also Cross , 892 F.3d at 299 (ruling that the same faults identified in Johnson "inhere in the residual clause of the guidelines"); Moore , 871 F.3d at 82 ("Although the residual clause in the pre- Booker guidelines is not quite ACCA ... it is not clearly different in any way that would call for anything beyond a straightforward application of Johnson ."). Thus, Johnson completes all the relevant constitutional legwork.
Still, the government argues that Johnson , which makes no mention of the Guidelines, is ACCA specific. Gov't's Opp'n at 15. Noting the absence of a Guidelines reference in Johnson featured in the analysis of four of the circuits that denied a motion like Hammond's.[10] See Blackstone , 903 F.3d at 1026-27 ("Neither Johnson nor Welch mentioned the mandatory or advisory Sentencing Guidelines."); Greer , 881 F.3d at 1247 ("[N]othing in Johnson speaks to the issue."); Brown , 868 F.3d at 302 (" Johnson dealt only with the residual clause of ACCA-a federal enhancement statute .... Johnson did not discuss the mandatory Sentencing Guidelines' residual clause at issue here ...."); Raybon , 867 F.3d at 630 (" Johnson [ ]'s holding was limited to the ACCA and did not extend to other legal authorities such as the Sentencing Guidelines." (internal quotation marks omitted) ). Johnson 's silence as to the Guidelines, however, is unremarkable. The constitutional question came to the court packaged as an ACCA case. Commenting on the mandatory Guidelines would have been a departure from the context of the case. Yet, § 2255(f)(3) speaks in terms of rights. Congress presumably used "right" "because it recognizes that the Supreme Court guides lower courts not just with technical holdings but with general rules that are logically inherent in those holdings ...." Moore , 871 F.3d at 82.
Indeed, both in and since Johnson , the Supreme Court has illustrated that *46 Johnson is not ACCA specific. A dissenting opinion in Johnson critiqued the Court's decision for striking the ACCA's residual clause when "[t]here are scores of federal and state laws that employ similar standards." Johnson , 135 S.Ct. at 2577 (Alito, J., dissenting). Had Johnson been limited to ACCA, the majority's easy response to this criticism could have been to say so. Instead, the response to the dissent's worry that the Court's broad rule placed in constitutional doubt "dozens of federal and state criminal laws," which rely on phrases like "substantial risk," was that not all such laws required gauging risk against imagined crimes and not all such laws injected uncertainty into what constituted "substantial risk" by giving four vastly different examples of crimes that meet the threshold-a reference to the enumerated-felonies clause-as the ACCA did. Johnson , 135 S.Ct. at 2561.
Then, in Beckles , the Supreme Court summarized Johnson 's rule as forbidding "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Beckles , 137 S.Ct. at 892. That rule applies to vague laws that "fix the permissible sentences for criminal offenses." Id. By invaliding the ACCA's residual clause, Johnson simply "applied the vagueness rule to a statute fixing permissible sentences." Id. Beckles reached a different conclusion for the current Guidelines not because of the shift from the ACCA to the Guidelines, but because of the shift from laws that bind to standards that guide. The advisory Guidelines did not trigger "the twin concerns underlying vagueness doctrine" because "they merely guide the district courts' discretion." Id. at 894.
In Dimaya , the Supreme Court considered a constitutional challenge related to the interplay of immigration and criminal law. Under 8 U.S.C. § 1227(a)(2)(A)(iii), non-citizens are deportable if convicted of an "aggravated felony." Aggravated felonies include crimes of violence "as defined in section 16 of Title 18." 8 U.S.C. § 1101(a)(43)(F). In turn, § 16 defines crime of violence to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Despite textual differences, and the case's immigration valence, in Dimaya the Supreme Court held that § 16(b) suffered from the same constitutional defect as the ACCA's residual clause. 138 S.Ct. at 1210.
The Supreme Court's reasoning in reaching that holding is instructive. Section 16(b)'s residual clause, the Court wrote, combined the same two features that made the ACCA's residual clause "constitutionally problematic." Id. at 1213. Thus, the Supreme Court wrote, " Johnson effectively resolved the case now before us." Id. The ensuing analysis reads like a book report on Johnson . Indeed, Section III of Dimaya , the heart of the Court's opinion, cites no case other than Johnson. See id. at 1213-16. To respond to dissenting opinions, the Court simply referred to Johnson. See id. at 1214 n.3 (" Johnson also anticipated and rejected a significant aspect of Justice Thomas's dissent in this case...."); id. at 1215 n.4 ("The Chief Justice's dissent makes light of the difficulty of identifying a crime's ordinary case. In a single footnote, the Chief Justice portrays that task as no big deal: Just eliminate the 'atypical' cases, and (presto!) the crime's nature and risk are revealed.... That rosy view-at complete odds with Johnson -underlies his whole dissent *47 ...."); id. at 1216 ("For anyone who has read Johnson , [Justice Thomas's dissent] will ring a bell"). Section 16(b) could be found constitutional only by "refusing to acknowledge one of the two core insights of [ Johnson ]." Id. at 1215 n.4. Section 16(b) was found unconstitutional not by extension of Johnson but by enforcement of Johnson . If the rest of the opinion had not already made that point clear, Dimaya concluded that, " Johnson tells us how to resolve this case." Id. at 1223. Surely if the Supreme Court considered the question presented in Dimaya a matter of enforcing Johnson , the same is true here. The distance between Dimaya and Johnson is far greater than the distance between this case and Johnson .
Hammond's comparison to retroactivity law drives home that his motion does not seek to establish a new rule but only to enforce the new rule already articulated in Johnson . As Hammond notes, Def.'s Reply at 12, "the retroactivity of [the Supreme Court's] criminal procedure decisions turn on whether they are novel." Chaidez v. United States , 568 U.S. 342, 347, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013). Applying this standard, the Supreme Court has explained that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. (quoting Teague , 489 U.S. at 301, 109 S.Ct. 1060 ) (emphasis in original). Conversely, "a case does not 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." Id. at 347-48, 133 S.Ct. 1103 (quoting Teague , 489 U.S. at 307, 109 S.Ct. 1060 ) (emphasis and alternations in original). In practice, then, a court does not create a new rule if it only applies a "general standard to yet another factual situation." Id. at 348-49, 133 S.Ct. 1103. Bringing that framework to Hammond's case, Johnson articulated a new rule that Hammond merely asks to be applied to a materially indistinguishable circumstance, simply swapping the ACCA's residual clause for its mandatory Guidelines' parallel. Def.'s Reply at 18.[11]
The government, as was true for the five circuits finding a petition like Hammond's untimely, cites Justice Sotomayor's concurrence in Beckles , see 137 S.Ct. at 903 n.4 (Sotomayor, J., concurring), in which she wrote that, "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [ Booker ] ... may mount vagueness attacks on their sentences." See Gov't's Opp'n at 9-10; Blackstone , 903 F.3d at 1027 ; Green , 898 F.3d at 320 ; Greer ; 881 F.3d at 1244 ; Brown , 868 F.3d at 302 ; Raybon , 867 F.3d at 629-30. Placing such weight on purportedly "open" questions framed by a concurring or dissenting Justice in determining what rights the Supreme Court has recognized, might give those rights radically different shape. Cf. Cross , 892 F.3d at 288 ("As a lower court, we are required to follow the Court's precedents until the Court itself tells us otherwise. Unless and until a majority of the Court overrules the majority opinions in Johnson and Dimaya , they continue to bind us."). In any event, ascribing Justice Sotomayor's footnote dispositive significance is unavailing here given how the Johnson majority responded to the dissent's concerns about the decision's implications *48 for similar laws and the Court's later opinion in Dimaya .
Next, the government argues that Johnson cannot apply here because, as Beckles exhibits, the Guidelines-mandatory or advisory-are not subject to a vagueness challenge. Gov't's Opp'n at 26-29.[12] Even sentences imposed under mandatory Guidelines, the government reasons, differ from the ACCA because the Guidelines always "operate within the statutory sentencing regime of the offenses of conviction" and an unconstitutional Guidelines calculation "would not alter the statutory boundaries for sentencing set by Congress for the crime." Id. at 27 (quoting In re Griffin , 823 F.3d 1350, 1355 (11th Cir. 2016) ). By contrast, the ACCA "is a federal statute that alters the statutory sentencing range for a crime." Id. at 28. While the government, echoing the Eleventh Circuit, is correct that a career offender sentence under the mandatory Guidelines could never exceed a statutory maximum, that argument overlooks the mandatory Guidelines' effect on the sentencing floor. Setting a mandatory minimum, no less than setting a mandatory maximum "fix[es] the permissible sentences for criminal offenses." Beckles , 137 S.Ct. at 892. Indeed, "[i]t is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed.... And because the legally prescribed range is the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty." Alleyne v. United States , 570 U.S. 99, 112, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ; see also id. at 116, 133 S.Ct. 2151 ("[T]here is no basis in principle or logic to distinguish between facts that raise the maximum from those that increase the minimum.").
Moreover, the government continues, the mandatory Guidelines did not function as a law because even "[u]nder the pre- Booker Guidelines, courts had authority to depart from the prescribed range in exceptional cases." Gov't's Opp'n at 29 (citing U.S.S.G. §§ 4A1.3, 5K2.0 ). The government's argument ignores Booker , which ruled that although the mandatory Guidelines were not statutes, the Guidelines still were "binding on judges" and imbued with "the force and effect of laws." Booker , 543 U.S. at 234, 125 S.Ct. 738. While sentencing judges had some authority to depart from the mandatory Guidelines, "the availability of a departure in specified circumstances does not avoid the constitutional issue." Id. at 234, 125 S.Ct. 738.[13] Of course, the constitutional issue arose only because the Guidelines were mandatory. Id. at 233, 125 S.Ct. 738.
Finally, Hammond persuasively asserts that if § 2255(f)(3) requires defendants to wait until the Supreme Court takes a case, which is indistinguishable from a defendant's, defendants will sit on ripe and known claims. Def.'s Reply at 25-26. Such a result would be at odds with AEDPA's statute of limitation, which prioritizes finality and expedient resolution of meritorious claims. See Mayle v. Felix , 545 U.S. 644, 662, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) ("Congress enacted AEDPA to advance the finality of criminal convictions.");
*49 United States v. Hicks , 283 F.3d 380, 388 (D.C. Cir. 2002) (assessing Federal Rule of Civil Procedure 15's applicability to habeas petitioners in light of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions").
Johnson 's rule-the right not to have a sentence fixed by an indeterminate and wide-ranging residual clause-instructs that a mandatory Guidelines sentence enhanced through application of the residual clause is unconstitutional. Hammond's § 2255 motion does not ask the Court to articulate a new rule of constitutional law, just to enforce a rule already established.
2. Is Hammond still a career offender?
Although the mandatory Guidelines' residual clause is unconstitutionally vague, Hammond's enhanced sentence is constitutional if his Maryland conviction for armed robbery with a deadly weapon and his federal bank robbery conviction satisfy either of the Guidelines' two other definitions of crime of violence. Indeed, as Hammond concedes, United States v. Redrick , 841 F.3d 478 (D.C. Cir. 2016), resolves that the Maryland conviction meets the elements clause's definition of crime of violence. Def.'s Supp. § 2255 Mot. at 33. Thus, the Court's analysis is limited to whether Hammond's federal bank robbery conviction, under 18 U.S.C. § 2113(a), remains a qualifying crime of violence.
a) Federal Bank Robbery
18 U.S.C. § 2113(a) provides that:
Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny-
Shall be fined under this title or imprisoned not more than twenty years, or both.
Section 2113(a) appears to be divisible, which is to say the statute describes distinct crimes. See Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 2249, 195 L.Ed.2d 604 (2016) (explaining meaning of divisible statute); see also United States v. Watson , 881 F.3d 782, 786 (9th Cir. 2018) ("[ Section] 2113(a) does not contain one indivisible offense. Instead, it contains at least two separate offenses, bank robbery and bank extortion."); United States v. McBride , 826 F.3d 293, 296 (6th Cir. 2016) (" Section 2113(a) seems to contain a divisible set of elements ...."). Section 2113(a)'s divisibility might, in some cases, require review of "a limited class of documents ... to determine what crime, with what elements, a defendant was convicted of." Mathis , 136 S.Ct. at 2249. Such review is not necessary here because, although neither party is explicit, each treats Hammond to have been convicted of taking property "by force and violence, or by intimidation."
b) The Categorical Approach to Crimes of Violence
The government claims that Hammond's bank robbery conviction under § 2113(a) is a crime of violence under the elements clause, which defines crime of violence to include "any offense ... that has as an element the use, attempted use, *50 or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (2003). Courts employ the "categorical approach" to assess whether a prior conviction fits that definition. United States v. Brown , 892 F.3d 385, 402 (D.C. Cir. 2018). In other words, the "analysis looks only to the elements of the crime to determine whether, by its terms, commission of the crime inherently (i.e. , categorically) requires" force. Id. Force in this context "means violent force-that is, force capable of causing physical pain or injury to another person." Curtis Johnson v. United States , 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (emphasis in original); see also Brown , 892 F.3d at 402 (applying Curtis Johnson 's definition of "force" to the Guidelines' elements clause). Thus, "[i]f it is possible to commit the crime without the use, attempted use, or threatened use of violent force, the offense-level enhancement does not apply, regardless of whether the defendant's actual conduct in perpetrating the offense would individually qualify." Brown , 892 F.3d at 402 (citing Mathis , 136 S.Ct. at 2249 ). Moreover, the Supreme Court has interpreted 18 U.S.C. § 16(a), a provision nearly identical to the Guidelines' elements clause, to require a mental state (or, a mens rea ) for the use of force that is more than "negligent or merely accidental." Leocal v. Ashcroft , 543 U.S. 1, 9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004).
Against this backdrop, Hammond makes two arguments for why his conviction under § 2113(a) is not categorically a crime of violence. First, the crime can be committed without the use, attempted use, or threatened use of violent force. Second, the crime can be committed without the intentional use, attempted use, or threatened use of violent force. Those arguments are taken in turn.
c) Does 18 U.S.C. § 2113(a) Require the Threatened Use of Violent Force?
Hammond contends that because § 2113(a) prohibits takings by "intimidation," federal bank robbery can be accomplished without even the threatened use of violent force. Def.'s Supp. § 2255 Mot. at 30. Intimidation, by Hammond's account, "occurs when 'an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts.' " Id. (quoting United States v. Woodrup , 86 F.3d 359, 364 (4th Cir. 1996) (emphasis and alteration in original) ). Conduct that reasonably communicates a threat of bodily harm, Hammond maintains, is distinct from conduct that threatens violent force. Id. at 30-31.
Yet, every circuit court but the D.C. Circuit, which has not addressed the subject, has ruled that intimidation-or conduct reasonably causing fear of bodily harm-is conduct that threatens violent physical force. See United States v. Ellison , 866 F.3d 32, 37 (1st Cir. 2017) ; United States v. Dykes , 724 F. App'x 39, 45 (2d Cir. 2018) ; United States v. Wilson , 880 F.3d 80, 84-85 (3d Cir. 2018) ; United States v. McNeal , 818 F.3d 141, 154 (4th Cir. 2016) ; United States v. Brewer , 848 F.3d 711, 715-16 (5th Cir. 2017) ; United States v. McBride , 826 F.3d 293, 295-96 (6th Cir. 2016) ; United States v. Campbell , 865 F.3d 853, 856, 857 (7th Cir. 2017) ; United States v. Harper , 869 F.3d 624, 626-27 (8th Cir. 2017) ; United States v. Watson , 881 F.3d 782, 785 (9th Cir. 2018) ; United States v. McCranie , 889 F.3d 677, 681 (10th Cir. 2018) ; In re Sams , 830 F.3d 1234, 1239 (11th Cir. 2016).[14] Indeed, "intimidation,"
*51 as it appears in § 2113(a), "simply means the threat of the use of force" and "the degree of 'force' threatened must be violent force." McNeal , 818 F.3d at 154 ; accord Ellison , 866 F.3d at 37 ; Wilson , 880 F.3d at 84-95 ; Brewer , 848 F.3d at 715 ; McBride , 826 F.3d at 296 ; Campbell , 865 F.3d at 856 ; Harper , 869 F.3d at 626-27 ; Watson , 881 F.3d at 785 ; McCranie , 889 F.3d at 680 ; In re Sams , 830 F.3d at 1239. The persuasive reasoning in these circuit decisions presents no reason to depart from their interpretation of "intimidation."
Rather than grappling with the uniform precedent, only some of which post-dates Hammond's briefing, Hammond cites cases which, in his view, exemplify the space between threatening bodily harm and threatening violent force. Def.'s Supp. § 2255 Mot. at 30-31; Def.'s Reply at 34-35. Hammond presents appellate cases that sustained convictions under § 2113(a) for conduct such as jumping on a bank counter, opening a cash drawer, and grabbing money, see United States v. Kelley , 412 F.3d 1240, 1243 (11th Cir. 2005), twice ordering a teller to put money in a bag, see United States v. Higdon , 832 F.2d 312, 313 (5th Cir. 1987), and saying to a teller that "if you want to go to heaven, you'll give me the money," but without making "any sort of movement toward the teller," see United States v. Yockel , 320 F.3d 818, 821 (8th Cir. 2003). Hammond, however, has watered down the facts of those cases. In Kelley , the Eleventh Circuit described the defendant's offense conduct as "slam[ing] onto the teller counter hard enough that [one victim] heard the noise from another room" while a second victim "was within arm's length" of the defendants "as they removed cash." Kelley , 412 F.3d at 1245. There, the victims reasonably perceived a threat of violence. Id. As for Higdon , the Fifth Circuit subsequently considered that case to exemplify that "intimidation in the bank-robbery context is inherently tied to a threatened use of force." Brewer , 848 F.3d at 715. Specifically, the Fifth Circuit considered the defendant's "insistent demands that the tellers empty their cash drawers" a "scarcely-veiled threat of some unarticulated reprisal." Id. (quoting Higdon , 832 F.2d at 315 ). Moreover, surveillance photos depicted that the defendant had an "aggressive, threatening presence as he lean[ed] over the teller counter and, with his right hand, demand[ed] compliance by his gestures." Id. (quoting Higdon , 832 F.2d at 315-16 ). In Higdon , the facts confirmed the defendant's implicit threat of violent force. Id. Likewise, the Eighth Circuit later confirmed that Yockel was consistent with the view that "[a] threat of bodily harm requires a threat to use violent force because it is impossible to cause bodily injury without force capable of producing that result." Harper , 869 F.3d at 626.
Beyond the real cases, Hammond hypothesizes ways to communicate a threat of physical harm short of threatening violent force, such as "threatening to poison another, threatening to give someone the *52 flu by coughing on them, or even worse, threatening to expose someone to a deadly disease." Def.'s Supp. Mot. § 2255 at 33. These "hypotheticals are too far-fetched to place federal bank robbery outside the ambit of § 4B1.2(a)(1)." United States v. Carr , 314 F.Supp.3d 272, 283 (D.D.C. 2018) ; see also Redrick , 841 F.3d at 484-85 ("The Supreme Court in other cases applying the categorical approach has cautioned against excessive 'legal imagination.' ").
Finally, Hammond draws a parallel between § 2113(a) and Connecticut's third-degree assault statute, which the First Circuit recently reviewed against 18 U.S.C. § 16(a)'s elements clause. See Whyte v. Lynch , 807 F.3d 463 (1st Cir. 2015). Connecticut's assault statute did not describe a crime of violence even though an element of the crime was the "intent to cause physical injury to another person" because the government offered no precedent that state courts had interpreted "physical injury" to mean anything more than "impairment of physical condition or pain." Id. at 469. "Common sense, moreover, suggest[ed] there exists a realistic probability that ... Connecticut can punish conduct that results in 'physical injury' but not require the 'use of physical force.' " Id. Whyte , however, is immaterial. When a federal court determines whether a state conviction meets a federal definition of crime of violence, the federal court must accept the state's interpretation of the criminal statute. Id. at 466-67. How Connecticut defines "intent to cause physical injury to another" says nothing about how to interpret a federal statute.
As every circuit has ruled, intimidation necessitates a threat of violent force.
d) Does 18 U.S.C. § 2113(a) Meet the Elements Clause's Mens Rea Requirement?
Next, Hammond insists that because federal bank robbery does not require intentional intimidation, § 2113(a) criminalizes conduct that can be committed with a less culpable mental state than is required by the Guidelines' elements clause. Hammond's argument fails for several reasons.
In Carter v. United States , 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000), the Supreme Court ruled that 18 U.S.C. § 2113(a), which does not contain an express mens rea requirement, is a "general intent" crime. Id. at 268, 120 S.Ct. 2159. As such, a defendant must have "possessed knowledge with respect to the actus reus of the crime (here, the taking of property of another by force and violence or intimidation)" to be guilty. Id. (emphasis added). Hammond understands the elements clause's definition of crime of violence as applicable only to convictions requiring the intentional use of force. Def.'s Supp. § 2255 Mot. at 24-25 (citing Leocal , 543 U.S. at 9, 125 S.Ct. 377 ). Leocal construed 18 U.S.C. § 16(a)'s definition of crime of violence, which is nearly identical to the Guidelines' elements clause, to "most naturally suggest[ ] a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9, 125 S.Ct. 377. Leocal did not hold, however, that knowledge of the use of force, or threatened use of force, was inadequate. See Campbell , 865 F.3d at 857 (recognizing that Leocal never held that "general intent crimes could not constitute crimes of violence"). Likewise, none of the circuit cases cited by Hammond, see Def.'s Supp. § 2255 Mot. at 25, instruct that a crime of violence must, in all instances, have as an element the intentional use of force. See United States v. Hernandez-Hernandez , 817 F.3d 207, 217 (5th Cir. 2016) (ruling that the defendant's prior conviction categorically involved the intentional use of force); United States v. Dixon, 805 F.3d 1193, 1197 (9th Cir. 2015) (ruling that the defendant's prior *53 conviction was not a crime of violence because the crime could be committed through accidental use of force); United States v. Armijo , 651 F.3d 1226, 1237 (10th Cir. 2011) (ruling that the defendant's prior crime was not a crime of violence because the crime could be committed through reckless use of force); United States v. King , 979 F.2d 801, 803 (10th Cir. 1992) (considering only whether conspiring to commit a violent felony is equivalent to threatening to use force). Thus, Hammond's argument that, as a matter of precedent, the elements clause's definition of crime of violence excludes crimes that require only the knowing use of force is unfounded.
Hammond offers no principle that justifies excluding from the elements clause's definition of crime of violence those crimes committed through the knowing use of force. Here too, all circuit courts to have considered the question are lined up against Hammond. See, e.g. , Ellison , 866 F.3d at 39-40 ; Wilson , 880 F.3d at 87-88 ; McNeal , 818 F.3d at 155-56 ; McBride , 826 F.3d at 296 ; Campbell , 865 F.3d at 856 ; Watson , 881 F.3d at 785 ; United States v. Horsting , 678 F. App'x 947, 950 (11th Cir. 2017). Those decisions are persuasive. Indeed, the Supreme Court interpreted § 2113(a) as a general intent crime because that mens rea sufficiently "separate[d] wrongful conduct from 'otherwise innocent conduct.' " Carter , 530 U.S. at 269, 120 S.Ct. 2159 (quoting United States v. X-Citement Video, Inc. , 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ). Carter confirms that including § 2113(a) within the elements clause's definition of crime of violence does not risk enhancing a sentence for the innocent use of force.
Still, Hammond contends that § 2113(a) criminalizes the negligent use of force. Def.'s Supp. § 2255 Mot. at 24-26; Def.'s Reply at 30-34. Hammond deduces as much because a defendant may be found guilty under the statute "even though he did not intend to put another in fear of injury," "as long as 'an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts.' " Def.'s Supp. § 2255 Mot. at 25, 26 (quoting United States v. Woodrup , 86 F.3d 359, 364 (4th Cir. 1996) ); see also Def.'s Reply at 30 ("This means that 'intimidation' is satisfied under the bank robbery statute whether or not the defendant actually intended the intimidation, as long as an ordinary person in the victim's position reasonably could infer a threat of bodily harm from the defendant's acts." (citing Kelley , 412 F.3d at 1244 ; United States v. Dawson , 300 F.Supp.3d 1207, 1210-12 (D. Or. 2018) ) ).
Hammond's opening brief fails to cite Carter , which is explicit that § 2113(a) is a general intent crime, necessitating that the defendant possessed at least knowledge of his intimidating conduct. Carter , 530 U.S. at 268, 120 S.Ct. 2159. Indeed, the First Circuit, discussing the same cases that Hammond insists support his conclusion, noted that the underlying rationale for each case ignores Carter. Ellison , 866 F.3d at 39, 39 n.4. In reply, Hammond acknowledges Carter , see Def.'s Reply at 32, but reasons that because intimidation is judged from the objective victim's vantage point, the knowing use of force is no different than the negligent use of force. Def.'s Reply at 30-33. This reasoning is not persuasive. As Judge Bates recently explained, "a jury cannot peer into a defendant's mind to determine what he knew at the time of a robbery." Carr , 314 F.Supp.3d at 280-81. Thus, a defendant's mental state is inferred "from the surrounding circumstances-including whether his actions were sufficient to intimidate a reasonable bank teller." Id. at 281 (citing *54 Horsting , 678 F. App'x at 950 ). Application of "an objective standard to determine whether a jury could have inferred knowledge from the defendant's actions does not ipso facto reduce the applicable mental state requirement to recklessness or negligence." Id. Indeed, the Model Penal Code reflects that different types of conduct bespeak different mental states. Id. at 281-82 (explaining that under Model Penal Code § 2.02(d)"a person acts with criminal negligence when she 'should be aware of a substantial and unjustifiable risk that [an element of an offense] exists or will result from [her] conduct' " but that under § 2.02(b)"a person acts knowingly with respect to a result when she 'is aware that it is practically certain that [her] conduct will cause [that] result' ").
Finally, contrary to Hammond's argument, Def.'s Reply at 32-33, Elonis v. United States , --- U.S. ----, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015), does not require a different result. In Elonis , the Supreme Court reviewed a conviction under 18 U.S.C. § 875(c), which outlaws transmitting in interstate commerce "any threat to kidnap any person or any threat to injure the person of another," but which, like § 2113(a), does not expressly provide a mens rea requirement. Elonis , 135 S.Ct. at 2008. The district court had instructed the jury to convict if the defendant "intentionally ma[de] a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted" as a threat. Id. at 2007. Yet, the Supreme Court vacated the conviction because the district court's instruction, by focusing "solely on how [the defendant's statements] would be understood by a reasonable person" had "reduce[d] culpability on the all-important element of the crime to negligence" and eliminated "the conventional requirement for criminal conduct-awareness of some wrongdoing." Id. at 2011 (quoting Staples v. United States , 511 U.S. 600, 606-07, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) ).
On the path to that holding, however, the Supreme Court specifically distinguished § 2113(a) as a statute that, unlike § 875(c), did not require proof of intent to avoid the risk of criminalizing negligent conduct. Id. at 2010. For § 2113(a), "the concerns underlying the presumption in favor of scienter are fully satisfied" by "a general requirement that a defendant act knowingly" because "a forceful taking-even by a defendant who takes under a good-faith claim of right-falls outside the realm of ... 'otherwise innocent' conduct." Id. (quoting Carter , 530 U.S. at 269-70, 120 S.Ct. 2159 ). On the other hand, a statute such as § 875(c), or "a statute similar to Section 2113(a) that did not require forcible taking," must impose an intent requirement to avoid "the risk of punishing seemingly innocent conduct." Id. (quoting Carter , 530 U.S. at 269, 120 S.Ct. 2159 ). Indeed, for such a statute, "the crucial element separating legal innocence from wrongful conduct" is the threatening nature of the communication. Id. at 2011 (quoting X-Citement Video, Inc. , 513 U.S. at 73, 115 S.Ct. 464 ). Thus, Elonis 's reasoning is explicitly limited to statutes that criminalize pure threats. See Wilson , 880 F.3d at 86 ("Wilson's attempt to extend Elonis 's reasoning to § 2113(a) is misguided."); United States v. Williams , 864 F.3d 826, 829-30 (7th Cir. 2017) ("The reasoning of Elonis does not extend to bank robbery, where the concerns about innocent conduct and free speech in Elonis do not apply. Williams's argument regarding intent is imported from, and better suited to, statutes criminalizing pure threats. Bank robbery is caused by intentional acts, not by negligence or accidental conduct.").
Section 2113(a) requires that the defendant had at least knowledge that his conduct *55 would be intimidating. The Guidelines' elements clause demands no more.
* * *
Johnson prohibits enhancing any sentence based on the mandatory Guidelines' residual clause. Hammond's prior Maryland conviction for armed robbery with a deadly weapon and federal conviction for bank robbery, however, are crimes of violence under the Guidelines' elements clause because each requires at least the knowing use, attempted use, or threatened use of violent physical force. Thus, Hammond's sentence does not implicate the rule enunciated in Johnson , and is constitutional.
IV. CONCLUSION
For the foregoing reasons, Hammond's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is denied.
An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Moore considered only whether a successive § 2255 could be certified under 28 U.S.C. § 2255(h). 871 F.3d at 74. Thus, that court's review of the issue was admittedly "tentative." Id. at 80.

In Snyder , the Tenth Circuit considered the timeliness of a Johnson -based motion, in which the petitioner claimed that his sentence had been enhanced through application of the ACCA's residual clause, 871 F.3d at 1124-26, and ruled that the district court, by "look[ing] beyond the allegations contained in Snyder's § 2255 motion" and determining timeliness by "whether Snyder was actually entitled to relief under Johnson ," wrongly applied § 2255(f)(3), id. at 1125-26. Snyder's motion was timely independent of whether he actually had been sentenced under the residual clause because his motion "assert[ed] the right established in Johnson , to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause." Id. In so reasoning, the Snyder Court endorsed the same methodology the Seventh Circuit employed. Nevertheless, in United States v. Greer , 881 F.3d 1241 (10th Cir. 2018), another panel of the Tenth Circuit subsequently ruled that a motion like Hammond's was untimely after tethering the timeliness analysis to whether Johnson in fact required granting the petitioner's motion, id. at 1249. Despite the cases' analytic inconsistencies, Greer did not overrule Snyder . Rather, Greer distinguished Snyder as a case that "raised a factual question about which clause of the ACCA the sentencing court relied on in enhancing his sentence." Id. at 1246. By contrast, "[a] factual finding that Mr. Greer was sentenced under the residual clause of the mandatory Guidelines does not end our inquiry but raises a new one. Such a finding would then require this court to address the constitutionality of the residual clause of the mandatory Guidelines in the first instance on collateral review." Id. Yet, the new inquiry that Greer resisted is precisely what § 2255(f)(3)'s second clause, as Dodd explained, requires of lower courts. Snyder correctly recognized that the timeliness inquiry is occupied by only § 2255(f)(3)'s first clause and the nature of the right asserted. 871 F.3d at 1126. The merits of a petitioner's claim must be addressed separately. Id. at 1128-30.

The government also argues that even if Johnson extends beyond the ACCA, Johnson 's right has not been made retroactive to non-ACCA cases. Gov't's Opp'n at 20-25. Yet, in Welch v. United States , --- U.S. ----, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), the Supreme Court made Johnson retroactive. Although the government casts Welch , like Johnson , as limited to the ACCA, see Gov't's Opp'n at 8, 19, Welch ruled that "Johnson is thus a substantive decision and so has retroactive effect." 136 S.Ct. at 1265. Therefore, Welch reaches as far as Johnson . Analyzing whether Welch applies to Hammond is no different than analyzing whether Johnson applies to Hammond.

Two of those circuits-the Ninth and Tenth-also expressed leeriness of running afoul of the Supreme Court's repeated admonitions that lower courts must not "determin[e] what rights have been recognized under AEDPA." Blackstone , 903 F.3d at 1026 (citing Lopez v. Smith , --- U.S. ----, 135 S.Ct. 1, 190 L.Ed.2d 1 (2014) ; Nevada v. Jackson , 569 U.S. 505, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013) ); see also Greer , 881 F.3d at 1248 ("To entertain such an argument would undermine Congress's intent in passing AEDPA and the 'interests of comity and finality' underlying federal habeas review." (quoting Teague v. Lane , 489 U.S. 288, 308, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ) ). Yet, each rebuke those circuits cite enforced 28 U.S.C. § 2254(d)(1)'s limitation of federal relief to cases in which a state court unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States." See Lopez , 135 S.Ct. at 3-4 ; Jackson , 569 U.S. at 508-09, 133 S.Ct. 1990 ; Teague , 489 U.S. at 308, 109 S.Ct. 1060. Strict enforcement of what has been "clearly established" for § 2254 is necessary to "prevent[ ] defendants-and federal courts-from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."Renico v. Lett , 559 U.S. 766, 779, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) ; see also Woods v. Donald , --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) ("Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a presumption that state courts know and follow the law." (internal quotation marks omitted) ). These principles "of federalism and comity," animating interpretations of § 2254, have limited relevance to § 2255.

Although new rules are not usually retroactive, Johnson was given retroactive effect because it fit one of the exceptions to the default rule. Welch , 136 S.Ct. at 1265 ("Johnson is ... a substantive decision and so has retroactive effect under Teague in cases on collateral review.").

Prior to Beckles , the government had conceded that even the advisory Guidelines' residual clause was unconstitutionally vague. Gov't's Opp'n at 18-19.

Notably, "even statutory minimum sentences are not exempt from departures, if, for instance, the government files a substantial-assistance motion, 18 U.S.C. § 3553(e), or the court finds that the defendant is entitled to the statutory safety valve, id. § 3553(f)." Cross , 892 F.3d at 306.

Citing three district court cases from the Western District of Washington, Doriety v. United States , No. 16-cv-924 (W.D. Wa. Nov. 10, 2016), Knox v. United States , 16-cv-5502, 2017 WL 347469 (W.D. Wa. Jan. 24, 2017), and Bolar v. United States , No. 09-cr-293, 2017 WL 1543166 (W.D. Wa. Apr. 28, 2017), Hammond cites a "split" as to "whether bank robbery requires the threat of violent force." Def.'s Reply at 34 (emphasis in original). Setting aside that no split exists and that the Ninth Circuit, since issuance of these three cited district court decisions, has ruled that federal bank robbery is a crime of violence, see Watson , 881 F.3d at 785, the three cited cases are unpersuasive for the reasons that Judge Bates recently explained when presented with whether § 2113(a) describes a crime of violence, see United States v. Carr , 314 F.Supp.3d 272, 284 n.14 (D.D.C. 2018) (explaining that the cited district court cases, respectively, ignored Carter v. United States , 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000), addressed § 2113(a)'s second paragraph, and imagined unrealistic ways in which a crime might be committed).